**OLYMPIC MARINE SERVICES, INC., Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

Civ. A. No. 91–128–N.

United States District Court, E.D. Virginia, Norfolk Division.

May 13, 1992.

address ASC's request to be made a party-defendant. Resolution of these, and other matters, is left to the state court.

Neil Samuel Lowenstein, George William Birkhead, Vandeventer, Black, Meredith & Martin, Norfolk, Va., Edward L. Skolnik, White Plains, N.Y., for plaintiff.

Michael Anson Rhine, Asst. U.S. Atty., Norfolk, Va., Peter G. Myer, U.S. Dept. of Justice, Torts Branch, Civ. Div., Washington, D.C., for defendant.

## OPINION AND ORDER

REBECCA BEACH SMITH, District Judge.

Following a bench trial, the court awarded plaintiff Olympic Marine Services, Inc. (hereinafter "Olympic") $141,678, plus costs and prejudgment and postjudgment interest, after concluding that defendant United States breached its contract with Olympic. Specifically, the court equitably adjusted the contract, in which Olympic agreed to deactivate a United States public vessel, to reflect the unforeseen and substantially worse condition in which Olympic found the vessel. This matter comes before the court on Olympic's motion, pursuant to the Equal Access to Justice Act (hereinafter "EAJA"), 28 U.S.C. § 2412, to recover from the United States costs, attorney fees, and expenses in the amount of $121,618.47. While the motion was under consideration, Olympic also submitted a motion to compel settlement of a claim that the parties had purportedly settled on the first day of trial. The United States had conditioned payments of the settlement upon Olympic's written waiver of any claim for attorney fees and expenses associated with the settled claim. The nature of Olympic's motion to compel makes it appropriate for consideration and resolution with Olympic's motion for attorney fees and expenses.

## I. Facts

Olympic contracted with the United States to deactivate the M/V Cape Henry, a public vessel of the United States.[1] The agreed total price was $944,250 and the contract period was sixty days. As part of the contract, and without an opportunity for inspection,[2] Olympic agreed to drain and clean five fuel tanks for $45,000. After beginning work on the tanks,[3] Olympic discovered that the actual condition of the tanks would significantly increase the cost of completing the contract. A second disputed contract item required Olympic to fill several piping systems with antifreeze. Again, after beginning work, Olympic found that it needed additional antifreeze and materials to meet the contract specifications.

Olympic then requested the United States to modify the contract by providing additional compensation and extending the deadline.[4] The United States refused to acknowledge that it had enlarged the scope of the contract and thus denied Olympic's request. Instead, the United States contended that the plain language of the contract obligated Olympic to clean the tanks at the agreed price, and that the United States had made no representations about the condition of the tanks. Olympic completed the job, but did so after the sixty-day contract deadline and at substantially greater expense than anticipated. In addition to its refusal to modify the contract, the United States withheld $16,108 as liquidated damages for the late completion of the job.

Pursuant to the disputes clause of the contract,[5] on October 16, 1990, Olympic submitted a claim to the Contracting Officer to recover its additional costs and the liquidated damages withheld by the United States. Olympic sought additional compensation of $628,759.01 for the additional labor, equipment rental, materials and waste disposal necessary to meet the contract specifications. Because of the Contracting Officer's alleged delay in issuing a Final Decision, Olympic filed this action on February 27, 1991, pursuant to the Contract Disputes Act of 1978, 41 U.S.C. §§ 601–613.[6] Nearly two months later, and six months after Olympic first submitted its administrative claim, the Contracting Officer issued a written decision, on April 17, 1991, awarding Olympic $3,500 for the additional costs to complete work on the fuel tanks, $7,500 for delay costs, $12,656 for the additional costs to complete work on the piping system, and a $1,500 reduction of the liquidated damages withheld by the United States. The Final Decision satisfied neither party and the case proceeded to trial.[7]

At the trial, the court found that the United States violated accepted marine practice regarding its handling of the fuel tanks before delivering the Cape Henry to Olympic for deactivation. (Excerpt of Pro-

1. The United States Department of Transportation, Maritime Administration (MarAd) owns the vessel and Interocean Management Corporation manages it.

2. The Cape Henry was at sea when the United States promulgated the specifications and request for bids.

3. Olympic had waited to begin work on the tanks until approximately two weeks before expiration of the deadline.

4. The terms of the deactivation contract incorporate MarAd's Master Lump Sum Repair Agreement, which incorporates specific clauses of the Federal Acquisition Regulations. These regulations require the United States, through a Contracting Officer, to equitably adjust the contract upon a change in conditions.

5. *See supra* note 4.

6. Specifically, the lawsuit arose out of a claim on a maritime contract that was filed with the Contracting Officer and "deemed denied." 41 U.S.C. § 605(c)(5).

7. After the first day of trial, on November 12, 1991, the parties settled Olympic's claim for additional compensation to complete the piping system work, but the parties could not resolve the dispute over the fuel tanks and the attendant delay costs and liquidated damages. Olympic sought $30,021 for the additional piping system materials, but settled for $12,656 and consequently reduced its claim for damages from $628,759.01 to $570,651.77. Although the parties agreed to settle this claim, their dispute over whether the settlement included attorney fees and expenses has caused Olympic to file a motion to compel settlement. *See infra* at 13–17.

ceedings at 5 (Nov. 15, 1991) [hereinafter "Tr."].) The United States failed to pump the fuel in the fuel tanks below the bell-mouths in accordance with industry custom; excessive and unusual sediments and scales contaminated the tanks; and the tanks contained a heavier oil than the parties anticipated. The United States' own expert witness supported this conclusion, as well as the Contracting Officer. (Tr. at 9–10.) The court found that the United States had an affirmative duty to disclose the condition of the tanks, but failed to do so. The court thus concluded that "this is an appropriate circumstance factually and legally for an equitable adjustment," (Tr. at 13), and awarded Olympic $141,678 for the additional expenses incurred to clean the fuel tanks, but did not award delay damages or a return of the liquidated damages withheld by the United States. The court also awarded Olympic its costs of action in the Final Judgment entered *nunc pro tunc* as of November 15, 1991.

## II. Legal Analysis

Title 28 U.S.C. § 1920 enumerates recoverable costs, but costs do not include expenses and attorney fees. *See* 28 U.S.C. § 2412(a) (Supp.1991). The EAJA, however, authorizes the court to award attorney fees and expenses in any civil action brought against the United States if (1) the claimant is a "prevailing party"; (2) the United States' position was not "substantially justified"; (3) "no special circumstances make an award unjust"; and (4) the claimant submits a fee application supported by an itemized statement to the court within thirty days of final judgment. 28 U.S.C. § 2412(b), (d)(1)(A)–(B); *see Commissioner, INS v. Jean*, 496 U.S. 154, 158, 110 S.Ct. 2316, 2319, 110 L.Ed.2d 134 (1990). On the litigated claims the parties contest only whether the United States' position was "substantially justified." On

the settled claim, the parties contest only whether Olympic was the "prevailing party." [8]

### A. United States Position Not Substantially Justified

The United States has the burden of justifying its position. *Abernathy v. Clarke*, 857 F.2d 237, 238 (4th Cir.1988) (citing *Campbell v. Bowen*, 800 F.2d 1247, 1249 (4th Cir.1986)). The Supreme Court has interpreted the phrase "substantially justified" as meaning a "reasonable basis both in law and fact." *Pierce v. Underwood*, 487 U.S. 552, 565, 108 S.Ct. 2541, 2550, 101 L.Ed.2d 490 (1988) ("the phrase before us here is not 'justified to a high degree,' but rather 'justified in substance or in the main'—that is, justified to a degree that could satisfy a reasonable person"). The United States cannot meet this standard merely by showing that its position was not frivolous, as defined in Rule 11 of the Federal Rules of Civil Procedure. *Id.* at 566, 108 S.Ct. at 2550. Rather, the United States must show that its position is "for the most part" justified. *Id.* at n. 2. The court FINDS that the United States has not shown that its refusal to modify the contract to reflect the unusual condition of the fuel tanks was reasonable in law and fact.[9]

#### 1. Unreasonable in Law

The United States' position was not reasonable in law. Throughout the litigation, the United States justified its refusal to equitably adjust the contract on the theory that the plain language of the contract required Olympic to meet the contract specifications at the $45,000 price, regardless of the Cape Henry's condition. The United States contended that because the contract language was unambiguous, the parol evi-

---

8. *See infra* at 14–15 for legal definition and discussion of "prevailing party."

9. Also, the United States has failed to articulate any justification, much less a substantial justification, for its position with respect to the settled piping system claim. The parties settled Olympic's piping system claim on the first day of trial, *see supra* note 7, thus leaving the record incomplete as to the merit of Olympic's claim. The United States, however, has the burden to make a strong showing that its position with respect to this claim was substantially justified, and it has not done so. Instead, the United States argues that Olympic was not a prevailing party with respect to the settled claim. *See infra* at 15–17.

dence rule prohibited evidence that contradicted or modified the contract's language. The court found that this position "obviously does not comport with the statutory and case law." (Tr. at 2.) Instead, evidence of trade practice and custom is relevant to show the parties' intentions. *See, e.g., Gholson, Byars & Holmes Constr. Co. v. United States*, 351 F.2d 987, 999–1000, 173 Ct.Cl. 374 (1965) (collecting cases). Moreover, the actual intent of the government in drafting a contract term is often considered irrelevant. *Corbetta Constr. Co. v. United States*, 461 F.2d 1330, 1336, 198 Ct.Cl. 712 (1972) ("The crucial question is 'what plaintiff would have understood as a reasonable construction contractor,' not what the drafter of the contract terms subjectively intended."). Industry custom and trade usage, therefore, is a fundamental part of every contract, including government contracts, and the United States' reliance on the parol evidence rule to preclude admission of such evidence was not reasonable.

At trial, and partially based on the United States' own expert, the court concluded that Olympic met its burden to show industry custom, and that the United States violated this standard:

> Normally, vessels are delivered for fuel tank cleaning with their fuel tanks cleared of contents by pumping the fuel down to the level of the bell-mouths.... The Cape Henry was delivered to Olympic with abnormally large quantities of substance remaining in the fuel tanks far above the bell-mouths of those tanks.

(Tr. at 8.) In addition to the United States' failure to pump the fuel tanks, the court also found that the United States used a very heavy oil and failed to perform preventive cleaning for four to five years, all of which further contributed to the unusual condition of the fuel tanks. (Tr. at 10–11.)

The United States also based its refusal to equitably adjust the contract on the absence of a formal change order. This argument also does not substantially justify the United States' position in that the condition of the fuel tanks constructively changed the contract. In *Calfon Constr., Inc. v. United States*, 18 Cl.Ct. 426 (1989), *aff'd*, 923 F.2d 872 (Fed.Cir.1990), the claims court articulated the standard for a constructive change:

> To recover under the contract's changes clause on the basis of a constructive change—for work beyond that required by the contract, but without a formal change order—the contractor must show that the requirements of the contract were enlarged and that the additional work was not volunteered, but was ordered by a government officer having the requisite authority.

*Id.* at 434 (citing *Len Co. & Assoc. v. United States*, 385 F.2d 438, 443, 181 Ct.Cl. 29 (1967)). As indicated above, the unforeseen condition of the Cape Henry's fuel tanks enlarged the scope of the contract, and Olympic did not volunteer to do the extra work, but was directed to complete the job by the Contracting Officer. (Tr. at 7.)

Furthermore, the contract itself expressly addresses equitable adjustment in the event of changed conditions such as apply to this contract. According to the "Changes" clause incorporated by the contract:

> If any such change causes an increase or decrease in the cost of, or the time required for, performance of any part of the work under this contract, whether or not changed by the order, the Contracting Officer shall make an equitable adjustment in the contract price, the delivery schedule, or both, and shall modify the contract.

*See supra* note 4. The courts and the Board of Contract Appeals have repeatedly recognized that both formal and constructive changes affecting contract performance entitle contractors to equitable adjustment. *E.g., Second Growth Forest Management, Inc.*, 778 Cont.App.Dec. (CCH) (85–3 B.C.A.) ¶ 18,224 (July 8, 1985); *Frank Briscoe Co., Inc.*, 436 Cont. App.Dec. (CCH) (73–1 B.C.A.) ¶ 9890 (Jan. 24, 1973); *Hawaiian Airmotive*, 225 Cont. App.Dec. (CCH) (65–2 B.C.A.) ¶ 4946 (June 30, 1965); *Scientific Welding Co.*, 112 Cont.App.Dec. (CCH) (61–1 B.C.A.) ¶ 2914 (Jan. 13, 1961). Thus, the position of the

United States had no reasonable legal basis and, therefore, was not substantially justified.

### 2. Unreasonable in Fact

The United States first argues that reliance on experts substantially justifies its position, even if the court ultimately disagrees with those experts. Although the improper weighing of conflicting expert opinions does not alone make the United States' position unreasonable in fact, *see Hargrave v. Secretary, Dep't of Health and Human Servs.*, 738 F.Supp. 987, 990 (E.D.Va.1990), the court heard consistent expert testimony from both parties, i.e., "fuel tanks are usually drained before being turned over to the contractor for cleaning." (Tr. at 9.) The United States' reliance on expert testimony, therefore, does not substantially justify the United States' position in refusing equitable adjustment.

The United States also bases its refusal to equitably adjust the contract on the methods Olympic used to clean the tanks, claiming these methods ineffective and uneconomical. A representative of the United States, however, was at the job site almost daily and never objected to Olympic's methods. (Tr. at 18–20.) Instead, the United States watched the work progress, received the benefit, and never complained about the quality of the work. (Tr. at 20.) The United States cannot claim that the methods to which it never objected can now provide a substantial justification for its refusal to equitably adjust the contract.

The United States also argues that its damages contentions were more justifiable than Olympic's. This argument is unpersuasive. Throughout trial, the United States never conceded liability for an equitable adjustment, yet it now relies on the Contracting Officer's award to Olympic and asserts that finding as its position. *See supra* at 3–4. The Contracting Officer, however, did not issue his Final Decision until nearly two months after Olympic filed this action. Furthermore, the United States never adopted the findings of the Contracting Officer, but instead contended throughout the litigation that the contract price was sufficient compensation for Olympic's work.[10] Even if the United States had adopted the conclusions of the Contracting Officer as its position, the court's award of $141,678 for Olympic's fuel tank work significantly exceeded the Contracting Officer's award of $3,500.

The United States correctly points out that not only is the court's award to Olympic of $141,678 significantly more than the Contracting Officer's award of $3,500, but also that it is substantially less than the $570,651.77 Olympic sought at trial. The size of Olympic's award with respect to the amount it sought, however, does not compel a finding that the position of the United States was substantially justified. The court was unable to calculate damages based on Olympic's time records, finding that the damage computations by both parties were speculative and "equally out of line." (Tr. at 15–16.) Instead, the court called its own expert to obtain an acceptable estimate of the costs to Olympic to complete the contract. Moreover, during trial the United States never based its refusal to modify the contract on the size of Olympic's claim. Regardless of the parties' respective damage contentions, the United States' unreasonable adherence to a position that denied equitable adjustment forced Olympic to pursue this costly litigation. Recovery of attorney fees and expenses, therefore, is appropriate and the court turns now to the calculation of those fees under the EAJA.

### B. Calculation of Recoverable Attorney Fees and Expenses

Olympic seeks to recover a total amount of $121,618.47 in attorney fees and expenses. Olympic submitted an itemized statement of the following: attorney fees in the amount of $95,148.25, which represent 806.15 hours of work; expenses in the

---

**10.** For example, the Contracting Officer never modified the contract to reflect his Final Decision, and the United States never paid Olympic the amount awarded by the Contracting Officer.

The United States eventually settled Olympic's piping system claim, for the amount awarded by the Contracting Officer, but only after the first day of trial. *See supra* note 7.

amount of $11,247.22, which represent telephone, postage, photocopy, deposition, and computer research; and expert witness fees and expenses in the amount of $15,223.

### 1. Recovery of Administrative Claim Costs

█ Olympic requests recovery of attorney fees and expenses incurred in preparing the claim it presented to the Contracting Officer. The EAJA provides for recovery of attorney fees "incurred by [the prevailing] party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action." The EAJA does not entitle Olympic to attorney fees and expenses incurred during administrative consideration of the claim before litigation. *Martin v. United States,* 12 Cl.Ct. 223, 227 (1987) (citing *Austin v. Department of Commerce,* 742 F.2d 1417, 1419 (Fed.Cir.1984); *Olsen v. Department of Commerce,* 735 F.2d 558, 562 (Fed.Cir. 1984)), *aff'd in part & vacated in part,* 852 F.2d 1292 (Fed.Cir.1988).

Olympic relies on *Dawco Constr., Inc. v. United States,* 18 Cl.Ct. 682, 701 (1989), *aff'd in part & rev'd in part,* 930 F.2d 872 (Fed.Cir.1991), for the proposition that claim preparation costs, including attorney fees, are a proper element of an equitable contract adjustment. This court did not include attorney fees in its equitable adjustment of the contract on November 15, 1991, and, therefore, it is unnecessary to decide the issue raised in *Dawco.* Olympic brought this motion pursuant to the EAJA, and, as stated above, the EAJA does not authorize the award of such fees and expenses. Accordingly, Olympic's request for recovery of the attorney fees and expenses attributable to its administrative claim preparation is DENIED.

### 2. Settlement Fees and Expenses

The United States argues unconvincingly that Olympic cannot recover its costs of negotiating the settlement of its piping system claim.[11] The United States argues first that the settlement it reached with Olympic on November 12, 1991, for $12,656 included a waiver of attorney fees and expenses. The United States also contends that because Olympic settled for less than half the amount it sought, Olympic was not a "prevailing party" with respect to this claim and, therefore, was not entitled to attorney fees and expenses under the EAJA. Consequently, the United States has conditioned its payment to Olympic of the $12,656 settlement amount on Olympic's execution of a waiver of attorney fees and expenses associated with the settled claim. In response, Olympic has filed a motion to compel settlement.

█ The court considers first the United States' argument that the settlement agreement includes a waiver of attorney fees and expenses with respect to the settled claim. On November 12, 1991, the parties orally agreed to settle the piping system claim. Through counsel, by letter to the United States dated November 18, 1991, Olympic confirmed the "firm settlement offer with respect to the [piping system] claim ... in the amount of $12,656." United States' Opp'n to Pl.'s Mot. to Compel Settlement Agreement, Ex. A (Feb. 18, 1992) (Letter of 11/18/91 from Vandeventer, Black, Meredith & Martin to the United States Department of Justice). By letter dated December 4, 1991, the United States accepted in writing the oral settlement reached November 12, 1991. *See id.* Ex. B (Letter of 12/4/91 from the United States Department of Justice to Vandeventer, Black, Meredith & Martin). The parties agree that these letters reflect the terms of their settlement agreement reached on November 12, 1991, and constitute the written confirmation of that agreement.

The parties, of course, were free expressly to address attorney fees and expenses in their settlement, but they did not. Attorney fees and expenses are not mentioned anywhere in these writings memorializing the settlement agreement. Absent an express agreement between the United States and Olympic as to the inclusion or waiver of attorney fees and expenses, the law

---

**11.** *See supra* at 2 and note 7 for delineation of    claim.

controls whether Olympic can recover the fees and expenses associated with its settled claim.

■ The Supreme Court has held that "plaintiffs may be considered 'prevailing parties' for attorneys fees purposes *if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit.* This is a generous formulation that brings the plaintiff only across the statutory threshold." *Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983) (emphasis added) (citations & footnote omitted). This standard is "generally applicable in all cases in which Congress has authorized an award of fees to a 'prevailing party.'" *Id.* at n. 8. More specifically, both the legislative history of the EAJA and case authority recognize that a settling party may be a prevailing party. In defining a "prevailing party," the legislative history of the EAJA provides: "A party may be deemed prevailing if he obtains a favorable settlement of his case." H.R.Rep. No. 96–1418, 96th Cong., 2d Sess. 11 (1980), *reprinted in* 1980 U.S.CODE CONG. & ADMIN.NEWS 4953, 4984, 4990; *see Cervantez v. Whitfield,* 776 F.2d 556, 562 (5th Cir.1985) ("It is not necessary that 'formal judicial relief' be granted; a settlement may yield a prevailing party."); *see also Finn v. United States,* 856 F.2d 606, 608 (4th Cir.1988) (citing with favor "case law supporting the award of EAJA fees when litigation is proven to be a catalyst for relief not directly compelled by legal process"); *Environmental Defense Fund, Inc. v. Watt,* 722 F.2d 1081, 1085 & n. 4 (2d Cir.1983) ("If ... by settling a case the United States could automatically make its position 'substantially justified' and thereby avoid any fee liability, the statute would withdraw with one hand what it proffered with the other."). Therefore, the law clearly permits a settling party to be a prevail-

ing party, and the absence of any agreement on recovery of attorney fees and expenses means that Olympic's settlement in and of itself did not constitute a waiver of these fees and expenses.

■ The court next considers the United States' argument that because Olympic settled for less than half the amount it sought, it was not a prevailing party with respect to this claim. Although the United States challenges whether Olympic prevailed with respect to the settled claim, it has not contested that Olympic prevailed on the litigated claims. *See supra* at 5. The court declines to follow the United States' suggestion to consider separately the questions of whether Olympic prevailed in the settlement and whether it prevailed in the litigation.[12]

With respect to whether a prevailing party on one claim can also recover attorney fees for an unsuccessful claim in the same litigation, the Fourth Circuit has instructed: "[E]ntitlement to fees for one aspect of a protracted litigation does not turn narrowly on whether the party prevailed on that particular matter, but whether a separate claim ... is so unrelated as to justify treating it as a 'separate lawsuit.'" *Plyler v. Evatt,* 902 F.2d 273, 280 (4th Cir.1990), *quoting Hensley,* 461 U.S. at 435, 103 S.Ct. at 1940. The settled piping system claim and litigated fuel tank claims in this case involve a common core of facts and are based on related legal theories. Olympic did not merely pursue a series of discrete claims, but instead sought and obtained additional compensation for changed conditions under its contract with the United States through both settlement and litigation. Having succeeded on significant issues and having achieved some of the benefit it sought, regardless of whether it prevailed on the settled claim, Olympic is clearly a prevailing party in this dispute. *See Hensley,* 461 U.S. at 433, 103 S.Ct. at

---

**12.** Even assuming that Olympic's success on the settled claim was determinative of recovery of costs associated with that claim, the United States has not cited, and the court is not aware of, any authority (case law or legislative history) that defines prevailing party under the EAJA as one which must receive a certain percentage of

the amount of the claim. Moreover, the court addressed this argument in the context of deciding whether the United States' position was substantially justified on the litigated claims and found it to be without merit. *See supra* at 10–11.

1939; *cf. Abernathy v. Clarke*, 857 F.2d 237, 239 (4th Cir.1988) (citing *Hensley*, 461 U.S. at 433, 103 S.Ct. at 1939, and defining prevailing party within the context of recovery of costs enumerated in 28 U.S.C. § 1920).[13] Accordingly, Olympic's motion to compel settlement in the amount of $12,656 is GRANTED, as is Olympic's request for recovery of the attorney fees and expenses attributable to its settlement negotiations.

3. Hourly Rate of Compensation

Notwithstanding the statutory cap of $75 per hour, Olympic requests full compensation for its attorney fees at the actual rates charged based upon the appropriateness of a cost of living upgrade from the statutory rate, the complex nature of this case, the specialized services required, and the ultimate outcome its attorneys achieved. The EAJA provides: "[A]ttorney fees shall not be awarded in excess of $75 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee." 28 U.S.C. § 2412(d)(2)(A)(ii). Olympic has the burden of proof on these issues.

■ The court, in its discretion, may enhance the statutory $75 cap to reflect inflation since the passage of the EAJA. *May v. Sullivan*, 936 F.2d 176, 177 (4th Cir. 1991), *cert. denied*, ── U.S. ──, 112 S.Ct. 887, 116 L.Ed.2d 791 (1992). The court "should describe mathematically the basis of all cost of living adjustments under the Act." *Jean v. Nelson*, 863 F.2d 759, 773 (11th Cir.1988), *aff'd on other grounds sub nom. Commissioner, INS v. Jean*, 496 U.S. 154, 110 S.Ct. 2316, 110 L.Ed.2d 134 (1990). Courts typically rely on the Consumer Price Index in calculating the inflation adjustment. *Ball v. Sullivan*, 754 F.Supp. 71, 74 (D.S.C.1990) (citations omitted). Although courts often award upward adjustments, "that fact does not translate into a requirement that they be made in all cases." *May*, 936 F.2d at 177. In fact, the Fourth Circuit in *May* affirmed the district court's refusal to grant an upward adjustment when presented with nothing except an increase in the Consumer Price Index. *Id.* at 178. Here, neither party submitted any evidence to justify or enable the court to calculate a cost of living increase to the statutory cap. The court cannot determine, therefore, that an increase in the cost of living justifies a higher fee.

■ Olympic also argues that "special factors" justify a higher fee than the $75 statutory cap. In seeking to preserve the intended effectiveness of the $75 cap, the Supreme Court has required that these special factors have more than a "broad and general application." *Pierce v. Underwood*, 487 U.S. 552, 573, 108 S.Ct. 2541, 2554, 101 L.Ed.2d 490 (1988). Among the special factors of this case, Olympic cites the complex nature of the case and the ultimate outcome its attorneys achieved. The Court in *Pierce*, however, found that the district court abused its discretion in relying on factors, among others, such as the "novelty and difficulty of issues" and "the results obtained." *Id.* The Court concluded that these "are factors applicable to a broad spectrum of litigation; they are little more than routine reasons why market rates are what they are." *Id.* These factors, therefore, even if true, do not justify a higher fee.

■ Olympic also cites the limited availability of qualified attorneys as a special factor justifying a higher fee. The Supreme Court has explained:

[This special factor] refers to attorneys having some distinctive knowledge or specialized skill needful for the litigation in question—as opposed to an extraordinary level of the general lawyerly knowledge and ability useful in all litigation. Examples of the former would be an identifiable practice specialty such as patent law, or knowledge of foreign law or language. *Where such qualifications are necessary and can be obtained only*

─────────

**13.** Moreover, as stated earlier, the position of the United States with respect to the settled claim was not substantially justified. *See supra* note 9.

*at rates in excess of the $75 cap*, reimbursement above that limit is allowed. *Id.* at 572, 108 S.Ct. at 2554 (emphasis added). Olympic contends that its case required the use of attorneys specializing in admiralty and government contracts law, both of which it asserts qualify as identifiable practice specialties. Other than a bare declaration, Olympic provided no evidence that its attorneys qualified as specialists in these areas, either through formal bar certification or overall nature of practice. However, assuming that Olympic's attorneys qualified as specialists in admiralty and government contracts law, this case did not require specialists in admiralty law. Rather, the law of government contracts controlled the resolution of the dispute between the parties.

Olympic's itemized statement of expenses, which contains the hourly rate of its attorneys, however, further undermines its assertion that its case required even the use of government contracts specialists. Olympic's assistant counsel, who performed a limited role at trial, but who was repeatedly identified as a government contracts specialist, billed at the lowest rate,[14] whereas Olympic's lead counsel, who specifically disclaimed specialization in government contracts, billed at the highest rate.[15] This discrepancy in billing rates seems to reflect the hierarchy within the law firm, not any particular expertise in government contracts practice. A ruling based on Olympic's itemized statement of attorney fees, therefore, would have the irrational effect of awarding higher fees to Olympic's lead counsel, who admitted his specialty was limited to admiralty law, than to Olympic's government contracts specialist.

Thus, both Olympic's itemized statement of fees and the roles of Olympic's attorneys during trial reflect a limited need for government contracts specialists.[16]

Moreover, over half of the attorney fees submitted by Olympic, $52,601, were charged by Olympic's New York corporate counsel, and Olympic makes no allegations that its corporate counsel specializes in either admiralty or government contracts law.[17] Thus, Olympic has also asserted no special factor that would support an increase to the $75 cap for the work of its New York corporate counsel.

Finally, even if Olympic's attorneys qualified as required specialists, Olympic made no showing of their limited availability in this area and that it could obtain their services only at rates in excess of $75. This litigation was at heart a simple contract case. Thus, although the court recognizes that Olympic's attorneys possess considerable experience and skill, Olympic cannot rely on the limited availability of qualified attorneys to justify a higher fee.

In summary, Olympic has not met its burden of proof to show any "special factors" to justify an award of attorney fees in excess of the statutory cap of $75 per hour. Accordingly, Olympic's request for an award in excess of the statutory cap is DENIED.

### 4. Expert Witness Fee

■ The United States objects to Olympic's request for $14,760 to compensate Olympic's expert witness, Mr. Joseph Thelgie.[18] The EAJA permits recovery of "the reasonable expenses of expert witnesses ... except that no expert witness shall be compensated at a rate in excess of the

---

14. Olympic's assistant counsel at trial was Neil S. Lowenstein, an associate in the law firm of Vandeventer, Black, Meredith & Martin, who billed Olympic at the rate of $90 per hour.

15. Olympic's lead counsel at trial was G. William Birkhead, a partner in the law firm of Vandeventer, Black, Meredith & Martin, who billed Olympic at the rate of $150 per hour.

16. Even if Olympic's case required the use of government contracts specialists and Olympic had provided evidence that its attorneys were such specialists, the question would remain whether government contracts work requires

the type of "distinctive knowledge or specialized skill" that distinguishes it from "the general lawyerly knowledge and ability useful in all litigation." *Pierce*, 487 U.S. at 572, 108 S.Ct. at 2554.

17. Olympic's New York counsel was Edward L. Skolnik, who billed Olympic at the rate of $125 per hour in 1990 and $130 per hour in 1991.

18. The United States has not objected to the laboratory fees and witness fees in the amount of $463 for Olympic's other expert, Mr. W. H. Jennings.

highest rate of compensation for expert witnesses paid by the United States." 28 U.S.C. § 2412(d)(2)(A)(i). Mr. Thelgie testified as to the normal industry standards for fuel tank cleaning and the effects on contractors of noncompliance with those standards, and the court concludes that his testimony and advice to Olympic was necessary to the preparation of Olympic's case.

Mr. Thelgie billed Olympic for 88.4 hours at the rate of $150 per hour for nontrial consulting and for trial testimony and consultation in excess of the first eight hours, and he billed $187.50 per hour for the first eight hours of trial testimony and consultation. Although Mr. Thelgie's efforts may be worth the added expense, the EAJA, as quoted above, permits reimbursement at a rate no higher than the highest rate the United States paid its experts. 28 U.S.C. § 2412(d)(2)(A)(i); see United States v. Dukesherer Farms, Inc., No. K83–468, 1988 U.S. Dist. LEXIS 17696, at *15 (W.D.Mich. Nov. 30, 1988) (unpublished).[19] The highest rate of compensation the United States paid its expert, Mr. Steven Crites, was $50 per day for four days of trial. At eight hours per day, the rate of compensation amounts to $6.25 per hour. The court, therefore, awards Olympic $6.25 per hour for the fee of its expert witness, Mr. Thelgie, for a total award of $602.50.[20]

### 5. Travel, Deposition, and Miscellaneous Expenses

▉ Olympic seeks $3,740 in travel expenses for its New York corporate counsel and its expert, Mr. Thelgie; $3,000.28 in deposition costs; and $4,506.94 in telephone, postage, photocopy, and computerized research expenses. The United States argues that the EAJA does not permit recovery of these expenses. In Jean v. Nelson, 863 F.2d 759, 778 (11th Cir.1988), aff'd on other grounds sub nom. Commissioner, INS v. Jean, 496 U.S. 154, 110 S.Ct. 2316, 110 L.Ed.2d 134 (1990), the court rejected "the government's argument that telephone, reasonable travel, postage, and computerized research expenses are not compensable under the EAJA." Although the circuits are not in complete agreement, this court concludes that the Eleventh Circuit's analysis is the most persuasive and represents the majority view of the courts that have considered the question. See generally id. at 776–78 (analyzing recoverable expenditures under 28 U.S.C. § 2412(d)(2)(A) and collecting and discussing other cases that have considered the issue). Moreover, recovery of Mr. Thelgie's travel expenses is specifically allowed under the EAJA. 28 U.S.C. § 2412(d)(2)(A)(i).[21] Because the court FINDS that all of these expenses reasonably were necessary for the preparation of Olympic's case, the EAJA entitles Olympic to recover them.

### III. Conclusion

The United States' position throughout the litigation was not substantially justified

---

**19.** Although the United States utilized and paid for the services of an expert witness in this case, the court notes that the EAJA offers no instruction on reimbursement of expert witness fees in cases in which the United States chooses not to call an expert witness. If the United States paid no experts, then any award to the prevailing party would be contrary to the law because it would be "in excess of the highest rate of compensation for expert witnesses paid by the United States." 28 U.S.C. § 2412(d)(2)(A)(i). Such a case would require the court to choose among the following options: award the full amount of reasonable expert fees requested; award an amount representative of the maximum expert fees the government would have been authorized to expend, if any; or award no expert fees.

**20.** This award does not include Mr. Thelgie's expenses. However, since the EAJA specifically permits recovery of "reasonable expenses of expert witnesses," 28 U.S.C. § 2412(d)(2)(A)(i), the court separately considers and awards Mr. Thelgie's travel expenses claimed by Olympic. See infra at 23–24 and note 21.

The court also notes that in addition to a consultation fee of $50 per day, for four days, the United States reimbursed Mr. Crites for travel and "miscellaneous" expenses in the amount $761.97, nearly four times the amount it paid for attendance at trial. See United States' Supplemental Opp'n to Pl.'s Post–Trial Mot. for Costs and Fees, Ex. A & B.

**21.** The court interprets the statute to allow separate consideration of the expert's actual reimbursable expenses and the fee for services rendered, the latter being capped by the highest rate of compensation paid by the United States to its expert(s). See supra at 21–23 and note 20.

and the EAJA, therefore, entitles Olympic to recover its reasonable attorney fees and expenses. Accordingly, the court GRANTS Olympic's motion for attorney fees and expenses, but limits the award to the fees and expenses Olympic incurred in litigating its claim before this court. Recovery of fees and expenses attributable to Olympic's administrative claim preparation is DENIED. Olympic's claim for attorney fees also is limited to the $75 per hour statutory cap. To the extent its claim for fees exceeds that cap, it is DENIED. The court GRANTS Olympic's motion to compel settlement and GRANTS Olympic its fees and expenses incurred in the settlement of the piping system claim, including any fees and expenses generated by efforts to compel that settlement. The court GRANTS Olympic's request for the expert witness fee, but reduces recovery of Mr. Thelgie's fee to the rate of $6.25 per hour. Lastly, the court GRANTS Olympic's request for travel, deposition, telephone, postage, photocopy, and computerized research expenses.

Olympic is ORDERED to resubmit within fourteen (14) days of the date of this Opinion and Order an itemized statement of its attorney fees and expenses to date in conformity with this decision. The United States has seven (7) days from the filing of Olympic's itemized statement to file any objections to it, but only on the ground that Olympic's submission does not conform to this Opinion and Order.

The Clerk is DIRECTED to send a copy of this Opinion and Order to all counsel of record.

It is so ORDERED.