T.C. Memo. 2002-320

UNITED STATES TAX COURT

LINDA A. FIELDS, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 16206-99.          Filed December 30, 2002.

    R determined deficiencies in tax, additions to
tax, and penalties for fraud with respect to P's 1991,
1992, and 1993 tax years.  P filed a petition for
redetermination, and R subsequently conceded the entire
fraud penalty.  P seeks recovery of litigation costs
pursuant to sec. 7430 in the amount of $47,640.98 or,
in the event a special factor is present, $92,822.98.

    1.  <u>Held</u>:  R's assertion of the fraud penalty was
substantially justified, within the meaning of sec.
7430(c)(4)(B)(i), with respect to one adjustment but
was not substantially justified with respect to the
balance of the adjustments.

    2.  <u>Held</u>, <u>further</u>, R's disparate treatment of P
and her ex-husband with respect to the fraud penalty
does not constitute a special factor within the meaning
of sec. 7430(c)(1)(B)(iii).

3. *Held*, *further*, P is entitled to recover costs in the amount of $28,800.

Lawrence W. Sherlock, for petitioner.

Susan M. Pinner, for respondent.

MEMORANDUM OPINION

HALPERN, *Judge*:  This case is before the Court on petitioner's motion for an award of litigation costs pursuant to section 7430 and Rules 230 through 233 (the motion).  Respondent objects.  Unless otherwise indicated, all section references are to the Internal Revenue Code of 1986, as amended, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Petitioner seeks to recover costs in the amount of $47,640.98 (or, in the event we determine that a special factor is present, $92,822.98) incurred in connection with respondent's determination of deficiencies, additions to tax, and penalties with respect to her Federal income tax liabilities for her 1991, 1992, and 1993 taxable (calendar) years.  Neither party requested an evidentiary hearing, and we conclude that such a hearing is not necessary for the proper disposition of the motion.  See Rule 232(a)(2).  The issues for decision are (1) whether respondent's assertion of the fraud penalty under section 6663 was substantially justified within the meaning of section

7430(c)(4)(B)(i); and, if not, (2) whether respondent's disparate treatment of petitioner and her ex-husband with respect to the fraud penalty constitutes a special factor within the meaning of section 7430(c)(1)(B)(iii); and (3) the amount of costs petitioner is entitled to recover under section 7430.

Factual and Procedural Background[1]

Introduction

During the years at issue, petitioner was married to Calvin Fields (sometimes, collectively, the Fieldses). Mr. Fields operated a plumbing contracting business as a sole proprietorship under the trade name Builders Interior Contractors (BIC). The Fieldses also operated other businesses, including a tanning salon, which they operated through Fields & Fields, Inc. (FFI).

In the late 1980s, the Fieldses developed a business relationship with an individual, Robert Carcasi, who did business as "R&M Accounting & Tax Service". Mr. Carcasi prepared the Fieldses' personal and business-related tax returns, performed certain accounting services with respect to the Fieldses' business ventures, and served as a general business adviser to the Fieldses.

---

[1] Because the parties appear to agree on the underlying facts relevant to dispose of the motion, there are no factual disputes to resolve, and we shall proceed on the basis of the parties' submissions.

Plumbing Claims Group, Inc. (PCG) was a joint claims operation formed by certain manufacturers of polybutylene plumbing materials to process damage claims made against such manufacturers, arising out of the failure of plumbing materials installed in residences in the 1970s and 1980s. BIC was one of several contractors engaged to do plumbing repair work for PCG. Beginning in 1991, Mr. Fields participated in a scheme to defraud PCG by submitting fictitious BIC invoices to PCG for repair work that Mr. Fields did not perform. From 1991 to 1993, PCG paid almost $350,000 of false BIC invoices, and Mr. Fields made payments of approximately $46,000 and $87,000 to or for the benefit of Mr. Fields' two co-conspirators.

The Fieldses' 1991 and 1992 Returns

The Fieldses made a joint return of Federal income tax for 1991 by filing a Form 1040, U.S. Individual Income Tax Return (the initial 1991 return) prepared by Mr. Carcasi. On Schedule C of the initial 1991 return (Profit or Loss from Business (Sole Proprietorship)), the Fieldses reported gross receipts of $484,010 and a net profit of $40,125 with respect to BIC. The Fieldses reported the $40,125 net profit as "business income" on line 12 of the initial 1991 return.

The Fieldses made a joint return of Federal income tax for 1992 by filing a Form 1040, U.S. Individual Income Tax Return (the initial 1992 return) prepared by Mr. Carcasi. In

furtherance of Mr. Carcasi's plan to offset a portion of BIC's 1992 income with a loss generated by the Fieldses' corporation, FFI, Mr. Carcasi prepared the initial 1992 return under the premise that BIC operated as a division of FFI, rather than as a sole proprietorship. Accordingly, the Fieldses did not attach a Schedule C to the initial 1992 return and did not report any "business income" on line 12 of that return. The Fieldses did report $100,000 of wage income for Mr. Fields from FFI on line 7 of the initial 1992 return. In addition, FFI made a $300,000 estimated tax payment in December 1992.

Commencement of Respondent's Examination

In May 1994, respondent commenced an examination of the initial 1991 return. In March 1995, respondent's revenue agent obtained BIC's 1991 bank statements from Mr. Carcasi. Those bank statements revealed that Mr. Fields had understated BIC's 1991 receipts by approximately $500,000. In subsequent conversations with PCG personnel, the revenue agent learned of the false invoice scheme and that Mr. Fields was under FBI investigation for his role therein.[2]

In at least one interview with the revenue agent, Mr. Carcasi claimed that petitioner had expressed concern that the amount Mr. Carcasi had initially planned to report as BIC's gross

---

[2] Mr. Fields eventually pleaded guilty to one count of conspiracy to commit mail fraud.

receipts on the Fieldses' 1991 Schedule C was too low.  Mr. Carcasi also told the revenue agent that he had prepared the Fieldses' 1991 Schedule C without the benefit of any bank deposit slips.

The Fieldses' 1993 Return

In July 1995, after respondent had commenced his examination for 1991, the Fieldses made a joint return of Federal income tax for 1993 by filing a Form 1040, U.S. Individual Income Tax Return (the 1993 return).  The 1993 return was prepared by Mike Marshall, a certified public accountant engaged by the tax attorney the Fieldses had hired (in Mr. Carcasi's stead) to represent them in connection with respondent's examination for 1991.  On the 1993 return, the Fieldses reported taxable income of approximately $2.8 million and tax of approximately $1.1 million.

Amended Returns

In October 1995, the Fieldses amended the initial 1991 return and the initial 1992 return by filing a Form 1040X, Amended U.S. Individual Income Tax Return, with respect to each such year (the amended 1991 return and the amended 1992 return, respectively). Mr. Marshall prepared both of the amended returns. On the amended 1991 return, the Fieldses reported $487,591 of additional business income from BIC.  On the amended 1992 return, the Fieldses reported $1,123,263 of business income from BIC and

$14,881 of additional interest income. Of the $14,881 of additional interest income, the Fieldses reported that $13,881 derived from BIC's commercial checking account. The Fieldses paid the resulting additional tax of approximately $500,000 (approximately $150,000 for 1991 and $350,000 for 1992) with the amended returns, apparently deriving approximately $450,000 of such amount from refunds of erroneous FFI estimated tax payments, including FFI's $300,000 1992 estimated tax payment.

Conclusion of Respondent's Examination

In February 1997, the revenue agent notified the Fieldses that, for 1991, 1992, and 1993, she proposed (1) a reduction of business expense deductions for all 3 years, (2) the fraud penalty for 1991 and 1992, and (3) certain other penalties. The case then went to respondent's Appeals Office. As part of a written settlement offer dated June 2, 1999, respondent's Appeals officer offered to concede 25 percent of the fraud penalty. The Appeals officer characterized such proposed concession as a 50-percent concession of petitioner's 50-percent share of the penalty. The Fieldses rejected that offer.

By notice of deficiency dated July 29, 1999, respondent determined deficiencies, additions to tax, and penalties with respect to the Fieldses' income taxes for 1991, 1992, and 1993 as follows:

| Year | Deficiency | Additions to Tax and Penalty Sec. 6651(a)(1) | Sec. 6663 |
|------|-----------|-----------------|-----------|
| 1991 | $14,505 | -- | $129,158 |
| 1992 | 43,026 | 2,307 | 299,461 |
| 1993 | 25,376 | 6,344 | 19,032 |

The deficiencies resulted from disallowed deductions for (1) commissions, fees, and contract labor expense consisting of payments to Mr. Fields' co-conspirators and certain family members, and (2) travel and entertainment expenses. The notice of deficiency also provided that the accuracy-related penalty under section 6662 (for negligence or disregard of rules or regulations) would apply in the event the fraud penalty did not apply.

Petitioner's Counsel

In August 1999, petitioner's present counsel, Lawrence Sherlock, notified petitioner and Mr. Fields (who by that time had divorced) that he could no longer jointly represent them in view of their conflicting interests with regard to the fraud issue, as evidenced by the Appeals officer's June 2, 1999, settlement offer. Petitioner and Mr. Fields agreed that Mr. Sherlock would continue to represent petitioner and that Mr. Fields would retain separate counsel.

The Petition and Proceedings to Date

By the petition, petitioner assigned error to respondent's determination of deficiencies, additions to tax, and penalties.[3] She set forth as an affirmative defense her claim to relief from joint and several liability under section 6015(c). Respondent denied that he had erred and denied her claim under section 6015(c), and the case was set for trial at the Court's trial session commencing on December 4, 2000, in Houston, Texas.

The parties reached a tentative settlement just prior to trial. When the case was called from the trial calendar, the parties filed a stipulation of settled issues, pursuant to which (1) respondent conceded the fraud penalty for all years and the accuracy-related penalty for 1992 and 1993, (2) petitioner conceded the accuracy-related penalty for 1991 and the additions to tax for late filing for 1992 and 1993, and (3) each party conceded portions of the business expense issues (subject, in petitioner's case, to her claim for section 6015(c) relief). Petitioner also filed a motion for continuance at that time with regard to the remaining business expense and section 6015(c) issues, pending Mr. Fields' payment of the deficiencies resulting from his concession of such business expense issues in his companion case.

---

[3] At the time of the filing of the petition, petitioner resided in Katy, Texas.

When it eventually became apparent that payment from Mr. Fields would not be forthcoming, petitioner's case was reset for trial at the Court's trial session commencing on December 3, 2001, in Houston, Texas. When the case was called from the trial calendar, the parties filed a supplemental stipulation of settled issues, pursuant to which (1) respondent conceded 50 percent of the remaining business expense deductions at issue, (2) petitioner conceded the section 6015(c) issue, and (3) petitioner reserved her right to file a motion for litigation costs under section 7430.

Discussion

## I.  Overview of Section 7430

### A.  Relevant Provisions

Section 7430 provides that, if certain conditions are met, a taxpayer who prevails against the United States in any tax proceeding (administrative or judicial) may recover reasonable costs incurred in connection with such proceeding.[4]  Section 7430(c)(4)(B) provides that a taxpayer shall not be treated as the prevailing party in any such proceeding if the United States establishes that its position in the proceeding was substantially justified.  In his objection to the motion, respondent seeks to establish that his position in this litigation was substantially

---

[4]  Petitioner does not seek costs incurred in connection with the administrative phase of this case.

justified.  Respondent also objects to the amount of costs claimed by petitioner.  Respondent concedes that petitioner satisfies all other requirements for recovery under section 7430.

B.  Position of the United States

In the context of a claim for litigation costs, the position of the United States with respect to any issue is that set forth in the Commissioner's answer in the judicial proceeding.  E.g., Maggie Mgmt. Co. v. Commissioner, 108 T.C. 430, 442 (1997).  In the instant case, the underlying controversy between the parties presented several issues, including (1) the propriety of certain business expense deductions claimed by the Fieldses under section 162, (2) the availability of relief under section 6015(c), (3) the applicability of the fraud penalty under section 6663 or, in the alternative, the accuracy-related penalty under section 6662 (for negligence or disregard of rules or regulations), and (4) the applicability of the late filing penalty under section 6651(a)(1).  Petitioner does not assert that respondent's position with respect to each of those issues was not substantially justified; rather, petitioner essentially limits her claim in that regard to respondent's position with respect to the fraud penalty.[5]

---

[5]  In her reply to respondent's objection to the motion, petitioner also claims, within the context of her argument that her costs are reasonable in amount, that respondent's alternative position with respect to the accuracy-related penalty was not
(continued...)

C.  Substantial Justification

A position of the United States in a judicial proceeding is substantially justified if it has a reasonable basis in law and fact.  E.g., Maggie Mgmt. Co. v. Commissioner, supra at 443.  We determine the reasonableness of respondent's position in this case based upon the facts available to respondent at the time he took the position (i.e., at the time of the filing of the answer) and the controlling legal precedent at such time.  Id.  The fact that respondent conceded the fraud issue does not, by itself, establish that his position with respect thereto was unreasonable.  Id.  However, it is a factor that may be considered.  Id.

II.  Application of the "Substantially Justified" Standard

A.  General Considerations

Section 6663(a) imposes a 75-percent penalty with respect to any portion of an underpayment of tax that is attributable to fraud.  Respondent bears the burden of proving fraud by clear and convincing evidence.  Rule 142(b).  In the case of a joint

---

⁵(...continued)
substantially justified.  Because the accuracy-related penalty is mentioned in only three of the time entries submitted by petitioner's counsel (none of which establishes the amount of time devoted solely to that issue), we do not think that a separate analysis of respondent's substantial justification for each of his alternative positions would be fruitful.  We therefore do not address the procedural ramifications, if any, of petitioner's failure to make her claim with respect to respondent's alternative position in the motion.

return, a spouse is not liable for the fraud penalty unless some portion of the underpayment is attributable to that spouse's fraudulent conduct. See sec. 6663(c).

In the context of Federal tax law, fraud entails intentional wrongdoing with the purpose of evading a tax believed to be owing. E.g., Neely v. Commissioner, 116 T.C. 79, 86 (2001). As stated by the Court of Appeals for the Fifth Circuit:

> 'Fraud implies bad faith, intentional wrongdoing and a
> sinister motive. It is never imputed or presumed and
> the court should not sustain findings of fraud upon
> circumstances which at most create only suspicion.'
> * * * 'Negligence, whether slight or great, is not
> equivalent to the fraud with intent to evade tax named
> in the statute. The fraud meant is actual, intentional
> wrongdoing, and the intent required is the specific
> purpose to evade a tax believed to be owing. Mere
> negligence does not establish either.' * * *

Webb v. Commissioner, 394 F.2d 366, 377 (5th Cir. 1968) (quoting Carter v. Campbell, 264 F.2d 930, 935-936 (5th Cir. 1959)), affg. T.C. Memo. 1966-81.

To succeed in the instant case, respondent must show that he had a reasonable basis for believing that he could prove his allegation of petitioner's fraud by clear and convincing evidence. See, e.g., Rutana v. Commissioner, 88 T.C. 1329, 1337-1338 (1987). More particularly, he must show that he had a reasonable basis for believing that he could prove by clear and convincing evidence that petitioner willfully intended to evade a tax she believed to be owing.

In the answer, respondent averred that petitioner fraudulently (1) understated business income on the initial 1991 return, (2) understated business income and interest income on the initial 1992 return, and (3) overstated business expense deductions on the amended 1991 return, the amended 1992 return, and the 1993 return.  Because each of the enumerated averments involves different circumstances, we address respondent's fraud allegation with respect to each such item separately.

B.  Understatement of 1991 Income

Respondent averred that petitioner fraudulently understated business income on the initial 1991 return by $487,591.  Although the Fieldses claimed that they relied completely on Mr. Carcasi to prepare the return properly, there are times when, in light of all the circumstances, "[t]he gap between the income received and that reported * * * is simply too substantial" to support a taxpayer's claim that he was a "mere innocent beneficiary" of a return preparer's misfeasance.  Estate of Temple v. Commissioner, 67 T.C. 143, 163-164 (1976).  In addition to the negative inference that respondent properly could have drawn from the existence of the large, unexplained understatement of income on the initial 1991 return, there was some evidence indicating that petitioner may have known that Mr. Fields' income with respect to BIC was understated on that return to some extent.  There was also some evidence that the Fieldses may not have supplied Mr.

Carcasi with all of the information he needed to prepare the initial 1991 return properly. Bearing in mind that we are evaluating the reasonableness of respondent's assertion of the fraud penalty in that context, rather than the ultimate applicability of the penalty itself, we find that respondent's position in that regard was reasonable (i.e., that respondent had a reasonable basis for believing that he could prove by clear and convincing evidence that petitioner intended to evade a tax that she believed to be owing).[6]

C. Understatement of 1992 Income

Respondent also averred that petitioner fraudulently understated business income and interest income on the initial 1992 return by $1,123,263 and $14,881, respectively. However, the circumstances of the understatement of 1992 income differ markedly from those of the understatement of 1991 income. The understatement of business income on the initial 1992 return plainly resulted from Mr. Carcasi's (not petitioner's) plan to treat BIC as a division of FFI, as did substantially all of the understatement of interest income on that return. More significantly, we are convinced by FFI's $300,000 estimated tax payment in 1992 that petitioner did not intend to evade tax on

---

[6] Compare Gutierrez v. Commissioner, T.C. Memo. 1995-569, in which we concluded that, although the taxpayer prevailed on the fraud issue at trial, it was reasonable for the Commissioner to put the taxpayer's credibility before the finder of fact.

BIC's 1992 income.[7] Without the BIC income, FFI apparently had no taxable income in 1992; indeed, the Fieldses apparently used the refund of FFI's $300,000 estimated tax payment to pay almost all of their 1992 underpayment of approximately $350,000 that resulted from Mr. Carcasi's botched plan. In effect, the Fieldses simply made a payment to the wrong tax account in 1992. On those facts, respondent had no reasonable basis for asserting the fraud penalty against petitioner with respect to the understatement of income on the initial 1992 return.

D. Disallowed Business Expense Deductions

Respondent averred that petitioner fraudulently overstated business expenses (1) on the amended 1991 return by $46,790, (2) on the amended 1992 return by $138,795, and (3) on the 1993 return by $64,081. Respondent's position in that regard is particularly puzzling, since the Fieldses filed those returns after respondent had commenced his examination of the years in question.[8] In effect, respondent took the position that petitioner committed fraud with respect to those returns even though she knew that respondent would immediately examine them.

---

[7] The size of that estimated tax payment indicates that the amount of BIC's income that was sheltered by FFI's losses in accordance with Mr. Carcasi's plan was, in fact, insubstantial.

[8] Petitioner alleges that the revenue agent who examined the returns never relied on the disallowed deductions to sustain a finding of fraud, an allegation that is supported by the revenue agent's report (Form 886-A) with respect to this case.

We find that difficult to believe. Furthermore, the Fieldses undeniably incurred the expenditures in question; the issue was simply whether the amounts were properly deductible as trade or business expenses under section 162. The Fieldses' new return preparer (whom the Fieldses' attorney had engaged in connection with respondent's examination) determined that the expenditures were deductible, and respondent eventually conceded a significant portion of the deductions. In light of the foregoing, we have little difficulty concluding that respondent had no reasonable basis for asserting the fraud penalty against petitioner with respect to such amounts.

E. Conclusion

We find that respondent's assertion of the fraud penalty with respect to the understatement of business income on the initial 1991 return was substantially justified. We find that respondent's assertion of the fraud penalty with respect to (1) the understatement of business income and interest income on the initial 1992 return, and (2) the overstatement of business deductions on the amended 1991 return, the amended 1992 return, and the 1993 return was not substantially justified. In that regard, we agree in large part with petitioner that respondent placed too much emphasis on the criminal activity of petitioner's ex-husband in pursuing his fraud case against petitioner.

III.  Amount of Recoverable Costs

A.  The "Special Factor" Issue

Section 7430(c)(1)(B)(iii) provides that attorney's fees recoverable under section 7430 shall not exceed $125 per hour (adjusted annually for inflation) "unless the court determines that a special factor, such as the limited availability of qualified attorneys for such proceeding, the difficulty of the issues presented in the case, or the local availability of tax expertise, justifies a higher rate."  Petitioner argues that the circumstances of this case warrant the determination of recoverable costs without regard to the statutory rate cap.[9] Specifically, petitioner argues that respondent's disparate treatment of petitioner and her ex-husband with regard to the fraud penalty, as evidenced by the Appeals officer's June 2, 1999, settlement offer, should qualify as a "special factor" in that such action necessitated the retention of separate counsel, effectively precluding her from sharing the cost of her defense with her ex-husband.

In Estate of Cervin v. Commissioner, 200 F.3d 351, 355-358 (5th Cir. 2000), affg. T.C. Memo. 1998-176, the Court of Appeals for the Fifth Circuit rejected the taxpayer's contention that the

_____

[9]  Petitioner raised the "special factor" argument for the first time in her reply to respondent's objection to the motion. Because we reject the substance of petitioner's argument, we do not address the procedural ramifications, if any, of petitioner's failure to raise the "special factor" issue in the motion.

finding of a special factor for purposes of section 7430 could be based on the alleged misconduct of the Commissioner.  The Court agreed with the Court of Appeals for the Second Circuit that, in a case in which an award of costs is warranted under section 7430, "the Commissioner's conduct has already been taken into account".  Id. at 357 (quoting Cassuto v. Commissioner, 936 F.2d 736, 744 (2d Cir. 1991), affg. in part and revg. in part 93 T.C. 256 (1989)).  We agree with both courts that the finding of a special factor based on the alleged misconduct of the Commissioner would amount to an award of punitive damages, contrary to the purposes of section 7430.  Estate of Cervin v. Commissioner, supra at 357; Cassuto v. Commissioner, supra at 744.[10]  We therefore reject petitioner's contention that we should treat respondent's conduct in this case as a special factor for purposes of section 7430.

B.  Adjustments to Claimed Costs

1.  Attorney's Fees Relating to Underlying Dispute

Respondent argues, and we agree, that petitioner is not entitled to recover fees that are attributable to issues other

_____

[10]  The version of sec. 7430 at issue in Estate of Cervin and Cassuto listed only "the limited availability of qualified attorneys" as an example of a special factor.  The subsequent addition of "the difficulty of the issues presented in the case" and "the local availability of tax expertise" as special factor examples reinforces the conclusion of the courts in those cases that the Commissioner's conduct is not the type of circumstance that can qualify as a special factor under sec. 7430.

than the fraud issue (i.e., issues with respect to which petitioner did not challenge the reasonableness of respondent's position). Further, in light of our finding that respondent's assertion of the fraud penalty was substantially justified in part, petitioner is not entitled to recover all of the fees that we allocate to the fraud issue.

a. Allocation of Fees to the Fraud Issue

We have reviewed the attorney time entries submitted by petitioner's counsel and have divided the entries relating to the underlying dispute into three categories: (1) entries pertaining solely to the fraud issue (55.6 hours), (2) entries pertaining solely to nonfraud issues (14.35 hours), and (3) all other entries relating to the underlying dispute (202.8 hours). Based on the statutory rate caps applied by petitioner,[11] the amount of potentially recoverable attorney's fees attributable to the entries in those three categories is $7,784 (55.6 x $140), $1,997 ([1.25 x $130] + [13.1 x $140]), and $28,217 ([17.5 x $130] + [185.3 x $140]), respectively, for a total of $37,998.[12] We allocate the $28,217 of residual (category 3) fees between the

_____

[11] The statutory rate cap for fees incurred by petitioner in 1999 is $130. Rev. Proc. 98-61, 1998-2 C.B. 811, 816. The rate cap for fees incurred in 2000 and 2001 is $140. Rev. Proc. 99-42, 1999-2 C.B. 568, 572; Rev. Proc. 2001-13, 2001-1 C.B. 337, 341. The rate cap for fees incurred in 2002 is $150. Rev. Proc. 2001-59, 2001-2 C.B. 623, 628.

[12] For convenience, we round all monetary calculations to the nearest dollar.

fraud issue and the nonfraud issues based on the relative dollar amounts at issue. Per the notice of deficiency, the total amount in dispute was $539,209, of which $447,651, or approximately 83 percent, was attributable to the fraud issue. Based on that percentage, we allocate $23,420 of the $28,217 of residual (category 3) fees to the fraud issue. Adding that figure to the $7,784 of category 1 fees, we find that $31,204 of petitioner's $37,998 of potentially recoverable attorney's fees are allocable to the fraud issue (the fraud defense amount).

> b. <u>Subtraction of Nonrecoverable Portion of Fraud Defense Amount</u>

We have found that respondent's assertion of the fraud penalty with respect to 1991, but not 1992 or 1993, was substantially justified in part (justified with respect to the business income omission on the initial 1991 return but not justified with respect to the business deductions overstatement on the amended 1991 return). Accordingly, in order to determine the portion of the fraud defense amount that petitioner is not entitled to recover, we must first allocate a portion of such amount to the 1991 fraud issue. The total of respondent's fraud penalties for 1991 through 1993 is $447,651. Based on the relative amounts of such penalties for 1991 ($129,158), 1992 ($299,461), and 1993 ($19,032), we allocate 29 percent, or $9,049, of the $31,204 fraud defense amount to the 1991 fraud issue. Next, we must allocate that $9,049 between the two 1991

adjustments with respect to which respondent applied the fraud penalty. As stated, we have found that respondent was substantially justified in applying the fraud penalty to his adjustment of the initial, but not the amended, 1991 return. Based on the relative amounts of those adjustments ($487,591 and $46,790, respectively), we allocate 91 percent, or $8,235, of the $9,049 amount to respondent's adjustment of the initial 1991 return. Petitioner is therefore entitled to recover $22,969 of the fraud defense amount ($31,204 – $8,235).

2. Attorney's Fees Relating to the Motion

For purposes of section 7430, reasonable litigation costs may include reasonable fees incurred in connection with the section 7430 proceeding itself, see Powers v. Commissioner, 100 T.C. 457, 492 (1993), affd. in part and revd. in part on another issue 43 F.3d 172 (5th Cir. 1995), regardless of the reasonableness of the Commissioner's position in the section 7430 proceeding. Bayer v. Commissioner, T.C. Memo. 1991-282 at n.5 (citing Commissioner, I.N.S. v. Jean, 496 U.S. 154, 158-166 (1990). Based on our review of the attorney time entries submitted by petitioner and the application of the statutory rate caps, we find that petitioner incurred $8,575 of potentially recoverable attorney's fees in prosecuting the motion ([20 x $140] + [38.5 x $150]). We further conclude that petitioner is entitled to recover such fees in proportion to her recovery of

other attorney's fees in this case. As determined above, petitioner is entitled to recover $22,969, or approximately 60 percent, of her $37,998 of potentially recoverable attorney's fees relating to the underlying dispute. Applying that percentage to the $8,575 of fees relating to the prosecution of the motion, we find that petitioner is entitled to recover $5,145 of such fees.

### 3. Other Costs

Petitioner claims additional litigation costs of $1,068.48. Of that amount, $318.50 is attributable to paralegal and legal assistant time entries pertaining solely to the fraud issue.[13] We conclude that petitioner is entitled to recover such fees in proportion to her recovery of the fraud defense amount. As determined above, petitioner is entitled to recover $22,969, or approximately 74 percent, of the $31,204 fraud defense amount. Applying that percentage to the $318.50 of paralegal and legal assistant fees, we find that petitioner is entitled to recover $236 of such fees.

We are unable to discern from the record the portion of petitioner's remaining costs of $749.98 that is attributable to the fraud issue. Applying the 60 percent "success ratio" that we

---

[13] Petitioner actually included the paralegal and legal assistant fees in her claim for attorney's fees. We treat such claim as a claim for litigation costs other than attorney's fees. See O'Bryon v. Commissioner, T.C. Memo. 2000-379 at n.2.

utilized to determine petitioner's recoverable motion-related fees, we conclude that petitioner is entitled to recover $450 of her remaining costs.

C. Summary

There is no special factor present in this case that would justify the determination of petitioner's recoverable attorney's fees without regard to the applicable statutory rate caps. Petitioner is entitled to recover $22,969 of attorney's fees relating to the underlying dispute, $5,145 of attorney's fees relating to her prosecution of the motion, $236 of paralegal and legal assistant costs, and $450 of remaining costs, for a total recoverable amount of $28,800.

IV. Conclusion

The motion is granted in part; petitioner shall be awarded litigation costs of $28,800.

To reflect the foregoing,

An appropriate order and decision will be entered.