COMMISSIONER, IMMIGRATION AND NATURALIZA-
TION SERVICE, ET AL. *v.* JEAN ET AL.

No. 89–601.   Argued April 23, 1990—Decided June 4, 1990

STEVENS, J., delivered the opinion for a unanimous Court.

*Paul J. Larkin, Jr.*, argued the cause for petitioners. On the briefs were *Solicitor General Starr, Assistant Attorney General Gerson, Deputy Solicitor General Merrill, Harriet S. Shapiro, William G. Kanter,* and *Michael J. Singer.*

*Ira J. Kurzban* argued the cause for respondents. With him on the brief were *Bruce J. Winick, Irwin P. Stotzky, Robert E. Juceam, Terrence A. Corrigan,* and *Sandra M. Lipsman.**

JUSTICE STEVENS delivered the opinion of the Court.

The Equal Access to Justice Act (EAJA) directs a court to award "fees and other expenses" to private parties who prevail in litigation against the United States if, among other conditions, the position of the United States was not "substantially justified."[1] In many cases parties are able to resolve by stipulation a claim for fees under the EAJA. In some cases, however, a fee application will prompt the Government to litigate aspects of the fee request or require the

---

*Briefs of *amici curiae* urging affirmance were filed for the American Immigration Lawyers Association by *Lawrence H. Rudnick;* for the National Immigration Project et al. by *Robert L. King* and *Niels W. Frenzen;* and for the National Organization of Social Security Claimants' Representatives by *James E. Coleman, Jr., Joseph E. Killory, Jr.,* and *Nancy G. Shor.*

[1] 28 U. S. C. § 2412(d)(1)(A). The EAJA, Pub. L. 96–481, 94 Stat. 2325, and its extension and amendment, Pub. L. 99–80, 99 Stat. 183, authorized fee awards to prevailing parties in both federal agency adjudications and certain civil actions. It therefore amended relevant portions of the Administrative Procedure Act (APA), 5 U. S. C. § 504 *et seq.*, as well as the Judicial Code, 28 U. S. C. § 2412 *et seq.* This case involves only the latter portion of the EAJA.

court to convene a hearing before deciding if an award of fees and expenses is authorized. The question in this case is whether a prevailing party is ineligible for fees for the services rendered during such a proceeding unless the Government's position in the fee litigation itself is not "substantially justified."

Because the question for decision is so narrow—affecting only eligibility for compensation for services rendered for fee litigation rather than the amount that may be appropriately awarded for such services—it is not necessary to restate the protracted history of this vigorously contested litigation.[2] It is sufficient to note that the District Court expressly found that respondents "were the prevailing parties within the meaning of the Act, that the government's position was not substantially justified and that there are no other special circumstances that would make an award unjust."[3] The Court of Appeals upheld these findings. *Jean* v. *Nelson*, 863 F. 2d

---

[2] The fee litigation is the subject of *Louis* v. *Nelson*, 624 F. Supp. 836 (SD Fla. 1985) (initial order), *Louis* v. *Nelson*, 646 F. Supp. 1300 (SD Fla. 1986) (corrected memorandum after hearing), and *Jean* v. *Nelson*, 863 F. 2d 759 (CA11 1988). The history of the litigation of the merits is traced in a dozen other opinions. *Louis* v. *Meissner*, 530 F. Supp. 924 (SD Fla. 1981); *Louis* v. *Meissner*, 532 F. Supp. 881 (SD Fla. 1982); *Louis* v. *Nelson*, 544 F. Supp. 973 (SD Fla. 1982); *Louis* v. *Nelson*, 544 F. Supp. 1004 (SD Fla. 1982); *Jean* v. *Nelson*, 683 F. 2d 1311 (CA11 1982); *Jean* v. *Nelson*, 711 F. 2d 1455 (CA11 1983); *Louis* v. *Nelson*, 560 F. Supp. 896 (SD Fla. 1983); *Louis* v. *Nelson*, 560 F. Supp. 899 (SD Fla. 1983); *Louis* v. *Nelson*, 570 F. Supp. 1364 (SD Fla. 1983); *Jean* v. *Nelson*, 727 F. 2d 957 (CA11 1984) (en banc); *Jean* v. *Nelson*, 472 U. S. 846 (1985); *Jean* v. *Nelson*, 854 F. 2d 405 (CA11 1988).

[3] 624 F. Supp., at 837. With respect to the lack of substantial justification, the court explained: "In light of prior precedent and the advice of counsel, [the Immigration and Naturalization Service's] refusal to comply with the APA was not reasonable; nor was the position of the United States Attorney's Office in defending these actions by claiming that the change in policy was not a rule subject to the rulemaking requirements of the APA." *Id.*, at 839.

759, 765–769 (CA11 1988). After an extensive review of the record developed at the fee hearing, however, the Court of Appeals decided that certain errors required that the case "be remanded for recalculation of attorney's fees and expenses." *Id.*, at 780. In view of this holding, we must assume that at least some of the positions petitioners took regarding the proper fee were substantially justified, even though their position on the merits of the litigation was not. Thus, the record squarely presents the question whether the District Court must make a second finding of no "substantial justification" before awarding respondents any fees for the fee litigation.

Petitioners concede that fees for time and expenses incurred in applying for fees are appropriate, but take the position that, unless the court finds that their position in the fee litigation itself was not substantially justified, fees for any litigation about fees are not recoverable.[4] It is respondents' position that fee litigation is a component part of an integrated case and that if the statutory prerequisites for an award of fees for prevailing in the case are satisfied, the award presumptively encompasses services for fee litigation. Because the Courts of Appeals have resolved this question differently, we granted certiorari. 493 U. S. 1055 (1990).[5]

---

[4] Petitioners divide the consideration of EAJA fee awards into two stages:

"In our view, it is appropriate to include reasonable fees and expenses incurred in preparing a fee *application* as part of any award of fees for the merits phase of the litigation. But . . . the government should not be required to pay for attorney's fees and expenses incurred in separate *litigation* over the availability and size of the fee award unless the position of the government in this distinct phase of the case was not substantially justified." Brief for Petitioners 15–16 (footnote omitted).

[5] Compare *Cinciarelli* v. *Reagan*, 234 U. S. App. D. C. 315, 729 F. 2d 801 (1984); *McDonald* v. *Secretary of Health and Human Services*, 884 F. 2d 1468 (CA1 1989); *Trichilo* v. *Secretary of Health and Human Services*, 823 F. 2d 702 (CA2 1987); *Powell* v. *Commissioner*, 891 F. 2d 1167 (CA5

I

Section 2412(d)(1)(A) of Title 28 provides:

> "Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust."

Thus, eligibility for a fee award in any civil action requires: (1) that the claimant be a "prevailing party"; (2) that the Government's position was not "substantially justified"; (3) that no "special circumstances make an award unjust"; and, (4) pursuant to 28 U. S. C. § 2412(d)(1)(B), that any fee application be submitted to the court within 30 days of final judgment in the action and be supported by an itemized statement. Only the application of the "substantially justified" condition is at issue in this case.[6]

The most telling answer to petitioners' submission that they may assert a "substantial justification" defense at multiple

---

1990) (no additional finding of substantial justification required), with *Continental Web Press, Inc.* v. *NLRB*, 767 F. 2d 321 (CA7 1985); *Cornella* v. *Schweiker*, 741 F. 2d 170 (CA8 1984); *National Wildlife Federation* v. *FERC*, 870 F. 2d 542 (CA9 1989) (additional finding required).

[6] We have held that the term "substantially justified" means " 'justified in substance or in the main'—that is, justified to a degree that could satisfy a reasonable person. That is no different from the 'reasonable basis both in law and fact' formulation adopted by the Ninth Circuit and the vast majority of other Courts of Appeals that have addressed this issue. To be 'substantially justified' means, of course, more than merely undeserving of sanctions for frivolousness." *Pierce* v. *Underwood*, 487 U. S. 552, 565–566 (1988) (citations omitted).

stages of an action is the complete absence of any textual support for this position. Subsection (d)(1)(A) refers to an award of fees "in any civil action" without any reference to separate parts of the litigation, such as discovery requests, fees, or appeals. The reference to "the position of the United States" in the singular also suggests that the court need make only one finding about the justification of that position.

In 1985, Congress amended the EAJA, adding the following definition:

> "(D) 'position of the United States' means, in addition to the position taken by the United States in the civil action, the action or failure to act by the agency upon which the civil action is based; except that fees and expenses may not be awarded to a party for any portion of the litigation in which the party has unreasonably protracted the proceedings." Pub. L. 99–80, 99 Stat. 185, § 2(c)(2)(B), 28 U. S. C. § 2412(d)(2)(D).

The fact that the "position" is again denominated in the singular, although it may encompass both the agency's prelitigation conduct and the Department of Justice's subsequent litigation positions, buttresses the conclusion that only one threshold determination for the entire civil action is to be made.[7]

---

[7] Congress' emphasis on the underlying Government action supports a single evaluation of past conduct. See H. R. Rep. No. 98–992, pp. 9, 13 (1984) ("[T]he amendment will make clear that the Congressional intent is to provide for attorney fees when an unjustifiable agency action forces litigation, and the agency then tries to avoid such liability by reasonable behavior during the litigation"); S. Rep. No. 98–586, p. 10 (1984) ("Congress expressly recognized 'that the expense of correcting error on the part of the Government should not rest wholly on the party whose willingness to litigate or adjudicate has helped to define the limits of Federal authority.' [H. R. Rep. No. 96–1418, p. 10 (1980).] The 'Government error' referred to is not one of the Department of Justice's representatives litigating the case, but is rather the government action that led the private party to the decision to litigate").

The language Congress chose in describing the fee application procedure in §2412(d)(1)(B) corroborates the statute's other references to a single finding. A fee application must contain an allegation "that the position of the United States was not substantially justified." *Ibid.* Again, the reference is to only one position, and it is to a position that the Government took in the past. There is no reference to the position the Government may take in response to the fee application. Moreover, the 1985 amendment to §2412(d)(1)(B) directs a court to determine whether the Government's past position was substantially justified "on the basis of the record (including the record with respect to the action or failure to act by the agency upon which the civil action is based) which is made in the civil action for which fees and other expenses are sought." Pub. L. 99–80, 99 Stat. 184–185, §2(b), 28 U. S. C. §2412(d)(1)(B). The reference to "the record" in the civil action is again in the singular.[8]

The single finding that the Government's position lacks substantial justification, like the determination that a claimant is a "prevailing party," thus operates as a one-time threshold for fee eligibility. In EAJA cases, the court first must determine if the applicant is a "prevailing party" by evaluating the degree of success obtained. If the Government then asserts an exception for substantial justification or for circumstances that render an award unjust, the court must make a second finding regarding these additional threshold conditions. As we held in *Hensley* v. *Eckerhart*, 461 U. S. 424 (1983), the "prevailing party" requirement is "a generous formulation that brings the plaintiff only across the

---

[8] The House Report on the amendment echoes this finality:

"When the case is litigated to a final decision by a court or adjudicative officer (or even when the case is settled after only some litigation procedures) the evaluation of the government's position will be straightforward, since the parties will have already aired the facts that led the agency to bring the action. *No additional discovery of the government's position will be necessary, for EAJA petition purposes.*" H. R. Rep. No. 99–120, p. 13 (1985) (emphasis added).

statutory threshold. It remains for the district court to determine what fee is 'reasonable.'" *Id.*, at 433. Similarly, once a private litigant has met the multiple conditions for eligibility for EAJA fees, the district court's task of determining what fee is reasonable is essentially the same as that described in *Hensley*. See *id.*, at 433–437.

In *Hensley*, we emphasized that it is appropriate to allow the district court discretion to determine the amount of a fee award, given its "superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters." *Id.*, at 437. The EAJA prescribes a similar flexibility. Section § 2412(d)(1)(C) empowers the district court, "in its discretion," to "reduce the amount to be awarded pursuant to this subsection, or deny an award, to the extent that the prevailing party during the course of the proceedings engaged in conduct which unduly and unreasonably protracted the final resolution of the matter in controversy." This exception to a fee award was repeated in the 1985 amendment that added a definition of "position of the United States," by there excluding fees and expenses "for any portion of the litigation in which the party has unreasonably protracted the proceedings." *Supra*, at 159; § 2412(d)(2)(D). Thus, absent unreasonably dilatory conduct by the prevailing party in "any portion" of the litigation, which would justify denying fees for that portion, a fee award presumptively encompasses all aspects of the civil action.[9]

Any given civil action can have numerous phases. While the parties' postures on individual matters may be more or less justified, the EAJA—like other fee-shifting statutes—fa-

___

[9] A cursory review of EAJA fee awards in 1989 (prior to appellate review) reveals that district courts substantially reduced the amounts of fees requested by parties. Out of 502 applications in 1989, the 413 that were granted requested a total of $2,419,123 in fees and expenses, of which only $1,850,906 were awarded. Annual Report of the Director of the Administrative Office of the U. S. Courts, Report of Fees and Expenses Awarded Under the Equal Access to Justice Act 99, Table 32 (1989) (hereinafter 1989 Report of Fees).

vors treating a case as an inclusive whole, rather than as atomized line-items. See, *e. g.*, *Sullivan* v. *Hudson*, 490 U. S. 877, 888 (1989) (where administrative proceedings are "necessary to the attainment of the results Congress sought to promote by providing for fees, they should be considered part and parcel of the action for which fees may be awarded"). Cf. *Gagne* v. *Maher*, 594 F. 2d 336, 344 (CA2 1979) ("[D]enying attorneys' fees for time spent in obtaining them would 'dilute the value of a fees award by forcing attorneys into extensive, uncompensated litigation in order to gain any fees'" under 42 U. S. C. § 1988), aff'd on other grounds, 448 U. S. 122 (1980); *Pennsylvania* v. *Delaware Valley Citizens' Council for Clean Air*, 478 U. S. 546, 559 (1986) (fees for postjudgment proceedings to enforce consent decree properly compensable as a cost litigation under § 304(d) of the Clean Air Act); *New York Gaslight Club, Inc.* v. *Carey*, 447 U. S. 54 (1980) (fees for administrative proceedings included under § 706(k) of Title VII of the Civil Rights Act of 1964). Petitioners acknowledge that the EAJA may provide compensation for *all* aspects of fee litigation; they only dispute the finding necessary to support such an award. They would allow, without a specific threshold determination, fees for "'the time spent preparing the EAJA fee application . . . because it is "necessary for the preparation of the party's case[,]" 28 U. S. C. § 2414(d)(2) (A),'" but they would subject a fee request for any further work in pursuing that application to an additional substantial justification defense. Brief for Petitioners 16, n. 17 (quoting *Kelly* v. *Bowen*, 862 F. 2d 1333, 1334 (CA8 1988)); see n. 4, *supra.* We find no textual or logical argument for treating so differently a party's preparation of a fee application and its ensuing efforts to support that same application.

## II

Petitioners further argue, as a matter of policy, that the allowance of an automatic award of "fees for fees" will encourage exorbitant fee requests, generate needless litigation, and

unreasonably burden the federal fisc. Brief for Petitioners 26–31. The terms of the statute, as well as its structure and purpose, identify at least two responses to these arguments.

First, no award of fees is "automatic." Eligibility for fees is established upon meeting the four conditions set out by the statute, but a district court will always retain substantial discretion in fixing the amount of an EAJA award. Exorbitant, unfounded, or procedurally defective fee applications—like any other improper position that may unreasonably protract proceedings—are matters that the district court can recognize and discount.[10] Petitioners' fear that such requests will receive "automatic" approval is unfounded. In contrast, requiring courts to make a separate finding of "substantial justification" regarding the Government's opposition to fee requests would multiply litigation. "A request for attorney's fees should not result in a second major litigation." *Hensley*, 461 U. S., at 437. As petitioners admit, allowing a "substantial justification" exception to fee litigation theoretically can spawn a "Kafkaesque judicial nightmare" of infinite litigation to recover fees for the last round of litigation over fees. Brief for Petitioners 29; *Cinciarelli* v. *Reagan*, 234 U. S. App. D. C. 315, 324, 729 F. 2d 801, 810 (1984).

Second, the specific purpose of the EAJA is to eliminate for the average person the financial disincentive to challenge unreasonable governmental actions. See *Sullivan* v. *Hudson*, 490 U. S., at 883.[11] The EAJA applies to a wide range of

---

[10] Because *Hensley* v. *Eckerhart*, 461 U. S. 424, 437 (1983), requires the district court to consider the relationship between the amount of the fee awarded and the results obtained, fees for fee litigation should be excluded to the extent that the applicant ultimately fails to prevail in such litigation. For example, if the Government's challenge to a requested rate for paralegal time resulted in the court's recalculating and reducing the award for paralegal time from the requested amount, then the applicant should not receive fees for the time spent defending the higher rate.

[11] Congress prefaced the EAJA with this statement of its findings and purposes:

awards in which the cost of litigating fee disputes would equal or exceed the cost of litigating the merits of the claim.[12] If the Government could impose the cost of fee litigation on prevailing parties by asserting a "substantially justified" defense to fee applications, the financial deterrent that the EAJA aims to eliminate would be resurrected. The Government's general interest in protecting the federal fisc[13] is subordinate to the specific statutory goals of encouraging private parties to

---

" '(a) The Congress finds that certain individuals, partnerships, corporations, and labor and other organizations may be deterred from seeking review of, or defending against, unreasonable governmental action because of the expense involved in securing the vindication of their rights in civil actions and in administrative proceedings.

" '(b) The Congress further finds that because of the greater resources and expertise of the United States the standard for an award of fees against the United States should be different from the standard governing an award against a private litigant, in certain situations.

" '(c) It is the purpose of this title—

" '(1) to diminish the deterrent effect of seeking review of, or defending against, governmental action by providing in specified situations an award of attorney fees, expert witness fees, and other costs against the United States; and

" '(2) to insure the applicability in actions by or against the United States of the common law and statutory exceptions to the 'American rule' respecting the award of attorney fees.' " Congressional Findings and Purposes, note following 5 U. S. C. § 504.

[12] Ninety percent of EAJA fee awards are made in cases involving the Department of Health and Human Services. In 1989, these awards averaged less than $3,000 each. 1989 Report of Fees, p. 100, Table 32.

[13] EAJA awards have remained comfortably under the Congressional Budget Office's 1985 Cost Estimate of 1,000 awards annually, averaging $6,000 each, by 1990. H. Supp. Rep. No. 99–120, pt. 2, p. 3 (1985). Although this case involves an exceptionally large award (the District Court's initial fee award totaled more than $1 million, 646 F. Supp., at 1323), in 1986 the average fee award under the EAJA, prior to appellate review, was $3,821. Annual Report of the Director of the Administrative Office of the U. S. Courts, Report of Fees and Expenses Awarded Under the Equal Access to Justice Act 93, Table 31 (1986). The average of the 413 awards granted in 1989, prior to appellate review, was $4,482. 1989 Report of Fees, p. 97, Table 31.

vindicate their rights and "curbing excessive regulation and the unreasonable exercise of Government authority."[14]

The "substantial justification" requirement of the EAJA establishes a clear threshold for determining a prevailing party's eligibility for fees, one that properly focuses on the governmental misconduct giving rise to the litigation. The EAJA further provides district courts discretion to adjust the amount of fees for various portions of the litigation,

---

[14] H. R. Rep. No. 96–1418, p. 12 (1980). The Committee Reports of both the House and the Senate reflect the dual concerns of access for individuals and improvement of Government policies.

"[T]he Government with its greater resources and expertise can in effect coerce compliance with its position. Where compliance is coerced, precedent may be established on the basis of an uncontested order rather than the thoughtful presentation and consideration of opposing views. In fact, there is evidence that small businesses are the target of agency action precisely because they do not have the resources to fully litigate the issue. This kind of truncated justice undermines the integrity of the decision-making process.

"The exception created by [the EAJA] focuses primarily on those individuals for whom cost may be a deterrent to vindicating their rights. The bill rests on the premise that a party who chooses to litigate an issue against the Government is not only representing his or her own vested interest but is also refining and formulating public policy. An adjudication or civil action provides a concrete, adversarial test of Government regulation and thereby insures the legitimacy and fairness of the law. An adjudication, for example, may show that the policy or factual foundation underlying an agency rule is erroneous or inaccurate, or it may provide a vehicle for developing or announcing more precise rules. . . . Where parties are serving a public purpose, it is unfair to ask them to finance through their tax dollars unreasonable Government action and also bear the costs of vindicating their rights." Id., at 10.

"Providing an award of fees to a prevailing party represents one way to improve citizen access to courts and administrative proceedings. When there is an opportunity to recover costs, a party does not have to choose between acquiescing to an unreasonable Government order or prevailing to his financial detriment. . . . By allowing a decision to contest Government action to be based on the merits of the case rather than the cost of litigating, [the EAJA] helps assure that administrative decisions reflect informed deliberation." S. Rep. No. 96–253, p. 7 (1979).

guided by reason and statutory criteria. The purpose and legislative history of the statute reinforce our conclusion that Congress intended the EAJA to cover the cost of all phases of successful civil litigation addressed by the statute.

The judgment of the Court of Appeals is affirmed.

*It is so ordered.*