KRAMER, Judge,
concurring:
I have reviewed Judge Steinberg’s articulate dissent, but nevertheless must take issue with it on the following grounds. First, I disagree that there is case precedent that holds that this Court has jurisdiction to consider an award under the Equal Access to Justice Act (EAJA) for work done in the Federal Circuit during a period when this Court was divested of any jurisdiction over the underlying matter. Although an inference could be drawn to that effect from the cited precedent, none of the cited cases directly addresses the jurisdictional question.
Second, even assuming that the Court has' jurisdiction, the dissent recognizes that it is a “question whether it is appropriate for this Court to exercise its jurisdiction,” and concludes that it is. Dissent, post at 423-424.1 find this a curious result, in light of the dissent’s recognition that Federal Circuit precedent construes its *419 owns rules as contemplating that “when attorney fees and expenses are authorized in connection with an appeal,” the Federal Circuit should determine “the amount of the award for such fees and expenses,” because it “is in a better position ... to determine the amount of fees and expenses to be awarded in connection with the appeal to [the Federal Circuit].” Id. (quoting Gavette v. OPM, 808 F.2d 1456, 1468 (Fed.Cir.1986) (en banc), (emphasis in dissent)). If the dissent were to prevail, the exact opposite process would occur— the determination would be made by a court (this Court) not in the best position to determine such amount. Although the dissent appears to suggest that the Federal Circuit admonition extends not to the actual grant of an application, but only to the amount of the award granted, see id. (emphasizing the wording in the Federal Circuit’s rules that it should determine the amount of fee awards), there is no escape from the inevitable result that, were this Court to determine that an award was appropriate, it would also have to calculate the amount of such award.
Third, again assuming jurisdiction, for this Court to involve itself in the same work as that undertaken in the Federal Circuit would require us to violate the prohibited practice that “[a] request for attorneys fees should not result in a second major litigation,” Commissioner, INS v. Jean, 496 U.S. 154, 163, 110 S.Ct. 2316, 110 L.Ed.2d 134 (1990) (quoting Hensley v. Eckerhart, 461 U.S. 424, 437, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)). This is especially true where our record does not include the parties’ filings in the Federal Circuit, interlocutory orders of that court, or the transcription of any oral argument heard in that court, let alone copies of internal Federal Circuit memoranda or conference notes.
Fourth, as the dissent points out, the appellant’s EAJA application, submitted to and denied by the Federal Circuit, limited itself to averring that the Secretary’s litigation position before our Court was not substantially justified. Thus, the appellant failed to aver that the Secretary’s position at the administrative stage also was not substantially justified. Nevertheless, the Federal Circuit in denying the appellant’s EAJA petition before it held only that the Secretary’s position before the Federal Circuit was substantially justified. To the extent that the dissent suggests that the issue of substantial justification should not have been bifurcated by the Federal Circuit, thus requiring consideration by our Court of whether there was substantial justification at the administrative level, it appears that any problem in this regard was caused by mistakes in the appellant’s application. The dissent, rather than penalize the appellant for such mistakes, would have him profit from them. See INS v. Jean, 496 U.S. at 159, 110 S.Ct. 2316 (“The most telling answer to the Government’s submission that it may assert a ‘substantial justification’ defense at multiple stages of an action is the complete absence of any textual support for this position.... [Requiring courts to make a separate finding of substantial justification regarding the Government’s opposition to fee requests would multiply litigation ... [and could] spawn a ‘Kafkaesque judicial nightmare’ of infinite litigation to recover fees for the last round of litigation over fees.”)
In response to the two reasons given by my colleague in Part 3E of his dissent for the collapsed “underpinnings” of the preceding paragraphs, I offer the following response. First, the dissent asserts that there is no issue here as to reasonableness of fees and expenses in the Federal Circuit because the Secretary is not contesting them here. As the dissent points out in Part 3D, this Court has an independent responsibility to review reasonableness, even in the face of a Secretarial concession. See Chesser v. West, 11 Vet.App. 497, 501-02 (1998) (citing Hensley, 461 U.S. at 433, 103 S.Ct. 1933; Ussery v. Brown, 10 Vet.App. 51, 53 (1997)) (rule is not that Court looks no further in absence *420 of supported attack on reasonableness of EAJA fees and expenses; rather, Court may look independently to see if requested fees not facially unreasonable or contraindicated by up to 12 factors, including time and labor required; duplicativeness of work; novelty and difficulty of question; legal skill necessary; preclusion of other employment by case; work traditionally done by nonattorneys; time limitations imposed; amount involved and results obtained; experience of attorneys).
Second, the dissent implies that the approach advocated by my concurrence would require EAJA litigation in both the Federal Circuit and this Court, thus causing two major litigations. The simple answer to this so-called “add[ed] complexity,” Dissent, post at 430, would be to apply to the extent possible the unitary litigation theory so eloquently propounded in the dissent. That means that an appellant, simply put, will apply for all EAJA fees and expenses in the highest court in which any such fees and expenses are sought for, at least, all work previously done in any court on behalf of the EAJA application. In other words, in practical terms, that means that the Federal Circuit is in a much better position to make an award for work done below it than this Court is to make such an award for work done above it.
In further response, the dissent’s commentary in footnote 7 once again shows my colleague’s predisposition, in violation of his own unitary theory, to overcomplicate the obvious. Can there be any question that the appellant garnered prevailing party status through his victory in the Federal Circuit, in which that Court clearly reversed this Court in regard to our holding of lack of jurisdiction to hear the appellant’s appeal and remanded the underlying matter for further proceedings on the merits? See Shalala v. Schaefer, 509 U.S. 292, 302, 113 S.Ct. 2625, 125 L.Ed.2d 239 (1993) (quoting Texas Teachers Ass’n v. Garland Independent School Dist., 489 U.S. 782, 109 S.Ct. 1486, 103 L.Ed.2d 866 (1989)) (remand relieving party of adverse decision satisfies prevailing party requirement because it represents “succe[ss] on any significant issue in litigation which achieve[d] some of the benefit ... sought in bringing suit”); Chesser, 11 Vet.App. at 499 (appellant prevailing party “by virtue of Court’s remand”); Stillwell v. Brown, 6 Vet.App. 291, 300-01 (1994) (where Court remands to Board, appellant is prevailing party).
Certainly, the appellant received benefit from the action of the Federal Circuit compared to his situation prior to his appeal to that Court. Even assuming that the benefit must be predicated on the appeal to this Court (not to the Federal Circuit from this Court), he has won the right to an appeal here on the merits, something he previously had been denied. This status permitted the filing of the appellant’s EAJA application within 30 days of the final judgment. Indeed, the Federal Circuit implicitly recognized that he was a prevailing party when it based its EAJA decision on the substantial justification question — an issue that can only arise once the appellant becomes a prevailing party. See Bazalo v. West, 150 F.3d 1380, 1383 (Fed.Cir.1998) (overruling on other ground but upholding this Court’s ruling that showing prevailing party status is jurisdictional and must be included in timely application; only must allege substantial justification); see also Court’s caselaw showing that first criterion in evaluating EAJA application is prevailing party status, e.g., Weierbach v. West, 12 Vet.App. 486, 487-89 (1999); Chesser, 11 Vet.App. at 499; Bazalo v. Brown, 9 Vet.App. 304, 309 (1996), rev’d in part on other grounds sub nom Bazalo v. West, supra (first jurisdictional requirement of EAJA suit is showing of prevailing party status); Lematta v. Brown, 8 Vet.App. 504, 510 (1996) (“Because this Court finds that the appellant has not shown that he is a prevailing party ... it is unnecessary ... to examine whether the appellant has met the other *421 ... requirements”); Stillwell, 6 Vet.App. at 298-301.