Stacey CARLSON, Plaintiff,

v.

Michael J. ASTRUE [1], Commissioner of Social Security, Defendant.

No. 4:05–cv–00658–RP–TJS.

United States District Court,
S.D. Iowa,
Central Division.

Aug. 16, 2007.

---

**1.** Michael J. Astrue became the Commissioner of Social Security on February 1, 2007. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Michael J. Astrue should be substituted, therefore, for Commissioner Linda McMahon, or Jo Ann Barnhart, as the Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

Max James Schott, Max Schott & Associates, PC, Des Moines, IA, Jean M. Mauss, Goodman & Associates PC, West Des Moines, IA, for Plaintiff.

Richard L. Richards, U.S. Attorneys Office, Des Moines, IA, for Defendant.

Memorandum Opinion And Order

PRATT, Chief Judge.

This matter is before the Court following reversal of the final decision of the Social Security Administration which had denied Plaintiff's disability benefits under provisions of the Social Security Act. Plaintiff's attorney filed an application June 13, 2007 requesting attorney fees under the Equal Access to Justice Act (EAJA) 28 U.S.C. § 2412.

Counsel claims that he has· expended 53.25 hours of work regarding Ms. Carlson's judicial review proceedings which would entitled him to $8,726.41 at the statutory rate determined by the EAJA. Defendant resists, stating that Mr. Schott's hours expended were not "reasonable," and that while he does not object to the hourly rates claimed he does state that the hours expended are not reasonable as contemplated by the EAJA. The defendant further asserts that its concerns go beyond this particular case in that "defendant seeks to avoid encouraging a sudden departure by those representing SSA claimants in this district from the usual amount billed in similar cases." Defendant's resistance also states that in addition to spending excessive amounts of time drafting the brief counsel spend 10 hours over the course of three days during March which is only captioned: "Began reviewing the administrative record and taking notes from the medical records." Plaintiff therefore totaled 14.5 hours for its initial review of the case. Plaintiff's attorney has not filed a reply to Defendant's resistance and the time for doing so under the Local Rules of the Court has past.

Defendant correctly points out that the burden to establish "reasonableness" of the fee request rests with Plaintiff. Defendant argues that the number of hours claimed by Plaintiff's attorney is ex-

cessive and therefore unreasonable. Defendant also argues that Plaintiff has inadequately documented the claimed time. Plaintiff's attorney asserts that the time expended is not excessive and therefore his request is reasonable. This disagreement requires the Court, who is "in the best position to evaluate counsel's representation on the substantive aspects of the disability claim" (*See Hickey v. HHS,* 923 F.2d 585, 586. (8th Cir.1991)), to analyze and determine what amount is "reasonable" under the circumstances presented.

In order to determine the amount of reasonable EAJA fees to which Plaintiff is entitled, it is necessary for the Court to review factually the substantive claims made by Plaintiff in her judicial review action as well as reviewing the history of the Plaintiff's claims both at the administrative and court levels. At the outset, it is important to note that in his response Defendant Astrue states: "Defendant does not oppose an award of reasonable EAJA fees in this case, Defendant respectfully submits that the number of hours billed is grossly excessive and does not conform to the number of hours normally expected in SSA disability cases in this district. Additionally, Plaintiff's counsel's method of billing relies on imprecise time entries."

The administrative record reveals that Plaintiff Ms. Carlson employed counsel on the basis of a contingent fee contract which provided as follows:

If my case is appealed into Federal Court, I agree to pay a fee equal to 25% of past-due benefits secured for me and my dependents. I authorize the Social Security Administration to pay my attorney this amount from my past due benefits. Attorney fees awarded under the Equal Access to Justice Act (EAJA) will belong to my attorney and count towards the 25% fee. The check for EAJA fees will be made payable to Max Schott & Associates, P.C. Date September 10, 2003.

Tr. at 37.

A review of the Court's docket shows that Plaintiff commenced her claim against the commissioner on December 12, 2005. Plaintiff served the defendants and filed a declaration of service on December 28, 2005, along with a Motion to withdraw her lawyer's appearance and a notice of appearance by a new counsel from the same law office. The Commissioner's Answer to the Complaint, along with the transcript, was filed on February 27, 2006. The next day, the Court set a briefing schedule for the parties to file their respective briefs and arguments in support of their claims and defenses. On March 28, 2006 Plaintiff filed an "unresisted First Application for Extension of time to File Her brief," reciting among other thing "an extension of time is necessary to fully develop the evidence of record." Magistrate Judge Shields granted the Motion and required the Plaintiff's brief to be filed May 5, 2006. On May 16, 2006, Plaintiff filed an "Unresisted Second Application for Extension of Time to file her Brief" stating, among other things, "Attorney Jean Mauss originally filed this action. There was a misunderstanding between subsequent counsel as to responsibility for preparation of Plaintiff's Brief in this matter. As a result, neither Plaintiff's Brief nor a request for additional time was filed by May 5, 2006." Magistrate Judge Shields granted the Plaintiff's attorney's request and set the date for Plaintiff's brief as June 16, 2006. On June 12, 2006 Plaintiff's counsel filed a third application for extension of time to file her brief. Magistrate Judge Shields granted this extension and ordered Plaintiff's brief to be filed August 16, 2006. On August 16, 2006, counsel filed "Plaintiff's Unresisted Fourth Application for Extension of Time to file her Brief." Magistrate Judge Shields granted this request but stated

"because this is Plaintiff's fourth application no further extensions will be granted absence extraordinary circumstances." He ordered Plaintiff's brief to be filed September 15, 2006. Plaintiff attempted to file an over length brief on September 15, 2006 and eventually filed a Motion to file an over length brief but did file her brief on September 21, 2006. Defendant's responsive brief was filed October 26, 2006. The Court reversed the Commissioner's final administrative decision finding: "It is the holding of this Court that Commissioner's decision is not supported by substantial evidence on the record as a whole. The Court finds that the evidence in this record is transparently one sided against the Commissioner's decision." The Court ordered benefits paid to Plaintiff. The Court's holding, in substance, was that the residual functional capacity assessment relied upon by the Administrative Law Judge was not supported by substantial evidence on the record as a whole and that when all Plaintiff's limitations were considered by the vocational experts there was not a substantial number of jobs that Plaintiff could perform. Disability benefits were ordered paid.

Plaintiff's Attorney seeks reimbursement for the expenditure of 53.25 hours of work on Ms. Carlson's judicial review proceedings. To determine whether this is a "reasonable fee" it is necessary to review the attorney's itemized submission and to determine from the perspective of the district court whether the work done was necessary and whether it was reasonable in relationship to what was required under the circumstances. Defendant's response to Plaintiff's claims are that the Court "should consider not merely whether the attorney's work was valuable to the client, but whether the issue were novel or complex, whether the record is voluminous or the facts are unusually complex, whether the attorney's specialized skill or knowledge was required, and what the usual

number of hours for similar cases are in the area." (See Defendant's brief at page 2) The Commissioner argues that he "specifically objects to the amount of time because it is 1) excessive, and 2) inadequately documented. Plaintiff has billed numerous hours in a very general fashion which he attributes to the brief. Of the hours billed here 44.5 hours were for the brief." Plaintiff has not filed a reply brief to argue with Defendant's contentions so the court will independently review the itemizations.

■ The first claim by Plaintiff's counsel is for 2.00 hours for 12/12/05 and is described "Review of medical file and the ALJ and Appeals Council's decision, in a case taken to hearing by a different attorney." This seems reasonable in terms of the time expended and in terms of being a realistic amount a lawyer would spend on whether or not to seek judicial review of final agency action. It seems additionally so given that the lawyer who handled the administrative hearing (Ms. Mauss) had left Mr. Schott's office. Furthermore, Rule 11, which as been called "the stop and think rule," requires that a lawyer assess the record to determine if the possible claims are supported by the facts and the law *before* commencing Complaint. The Court will find this time to be reimbursable under EAJA.

■ Counsel claims a total of 44.5 hours writing Plaintiff's brief. The entry for 3/26/06 to 3/28/ 06, claiming 10.0 hours, is entitled: "Began reviewing the administrative record and taking notes from the medical records." A review of the brief will show that the first 13 pages of Plaintiff's brief consists of a review of medical care and treatment along with a review of the consulting physicians' reports. This summary of facts is always important to a reviewing court, especially when sitting as an appellate court, which is essentially what the district court does when review-

ing an administrative decision. It seems reasonable to the Court that a careful appellate lawyer would review the administrative record and make notes before beginning his brief writing work. In this case, perhaps this work took longer because the lawyer who had represented Plaintiff during the administrative phase had withdrawn, and a lawyer relatively unfamiliar with the record was now drafting the brief. The Court will find this time reasonable and reimbursable under the EAJA.

█ The next substantial time allocation sought by counsel is for the time period of 5/15/06 to 5/16/06 in which Counsel states: "Completed first review of the administrative record," for which 4.50 hours were expended. Also, on May 16, 2006, Counsel filed his second request for an extension of time.

In the 5/15/06 application, Counsel asserted that:

Attorney Jean Mauss originally filed this action. There was a misunderstanding between subsequent counsel as to responsibility for preparation of Plaintiff's Brief in this matter. As a result, neither Plaintiff's Brief nor a request for additional time was filed by May 5, 2006. Due to Ms. Mauss' departure and the resulting increased workload, additional time is necessary to prepare Plaintiff's brief.

This request seems unusual since the entry dated December 28, 2005, is for the time to file counsel's appearance and the Motion to withdraw the "former attorney." This is one of the Commissioner's complaints of Plaintiff's itemization that it is not specific enough. Nevertheless, the record in this case is 440 pages. Claimant's testimony takes up 35 pages. Reviewing such a record, taking notes to become familiar with the record before beginning an appellate brief is not an unreasonable amount of time to expend. The Court will find this time reimbursable.

█ Counsel for Plaintiff next claims 8.00 hours for the time period 6/11/06 and 6/12/06 for "Reviewed note summaries and prepared detailed outline of the legal arguments to be made, together with case law search for applicable authority." This kind of legal work is best described as probably "thinking before writing." Every lawyer has a different way of approaching their work. The method of doing brief writing which works best for a particular lawyer is something that the Court is hard pressed to second guess. This type of time seems reasonable to me and I will find it necessary to preparing a good brief.

█ Plaintiff has three more substantial time entries in his itemization. These include 8.00 hours on September 12 for "Drafted Jurisdictional Statement and Statement of Facts." There is an entry on September 13 for another 8.0 hours for "Drafted first and second arguments." The last entry for the brief is for September 14 to September 15 and that entry is "Completed writing and revisions. Filed Brief with the Court."

Defendants's response to Plaintiff's fee request makes the following arguments: "This was a simple SSA disability case involving non-complex and routine matters which could have been argued in far less time in no more than 20 pages." Counsel then cites to other cases for comparison and as support for his argument that Plaintiff's attorney's pending request is "grossly excessive" and "inadequately documented." The Court is reminded of the observations made by Judge Miles Lord regarding the matter of attorneys fees in class action cases. Although not "on all fours," the Court's reasoning is of some value when evaluating EAJA claims. In *Muehler v. Land O'Lakes, Inc.,* 617

F.Supp. 1370 (D.Minn.1985), Judge Lord wrote:

We as members of the judiciary must be ever watchful to avoid being isolated from the experience of those who are actively engaged in the practice of law. It is difficult to evaluate the effort it takes to successfully and ethically prosecute a large plaintiffs' class action suit. It is an experience in which few of us have participated. The dimensions of the undertaking are awesome. The time and effort expended test the ability of many lawyers to survive during the lifetime of the action. Some plaintiffs' lawyers have worked on cases before me for as long as ten years and spent a substantial portion of their billable time each year on the effort. At the end they may have received a fee in the millions of dollars. However, averaged out over the years and subtracting taxes and the expenses of a law office, it averages out to be a very moderate payment. It certainly does not equate with any bonanza or pot of gold.

The same observation maybe made regarding the practice of social security disability law. While it may appear to a casual observer that the fee request here is "excessive" or inadequately documented, the fact is that Counsel has been pursuing the case for this Plaintiff for almost four years. The record reflects that she first employed counsel regarding her application on September 10, 2003. Judge Lord went on to observe:

The lawyers for a class of plaintiffs serve justice best when they are able to earn a living at their profession. The concern should be to provide class action plaintiffs' lawyers with incentives enough to adequately and vigorously represent clients within the bounds of professional responsibility. To say that the plaintiffs' bar, or, for that matter, the defendants' bar, is not altruistic says nothing as to whether they perform a vital function in our society. Nor does it speak to the essential fact that to continue to assure that this function will be carried out in the future, the courts must ensure that counsel receive adequate compensation for the effort they put forth, the result they achieve, the benefit they bestow on the class, and the risk they take in prosecuting this type of case.

*Id.* at 1377.

■ As Counsel for the government correctly points out, while the Supreme Court in *Pierce v. Underwood,* 487 U.S. 552, 573, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988) held that Congress could set limits in determining the appropriate amount (hourly rate set at $75.00 plus cost of living adjustments) of reimbursement a prevailing plaintiff was entitled to receive, a court still must determine whether the time and work expended was reasonable. It not the role of the court to look back and, with the advantage of hindsight, criticize counsel for being overly zealous in bringing facts and legal issues to the attention of the court. Although Judge Lord addressed this issue in the context of a class action, the same rationale pertains to disability cases.

Certainly lawyers should be required to document their fee requests, but the courts must not place an insurmountable or unfair burden on counsel. In the first place, we have not compensated counsel for filing their fee applications. In a sense, we have forced them to donate their time in order to recover what is rightfully theirs. If we place too heavy a burden on attorneys to demonstrate why each telephone call, conference or memorandum actually had some real benefit to the class, we create a morass. "It is not necessary to know the exact number of minutes spent nor the precise activity to which each hour was devoted nor the specific attainments

of each attorney." *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, at 473 (2d Cir.1974); *Merola v. Atlantic Richfield Co.*, 493 F.2d 292 (3d Cir.1974). Competent counsel should leave no stone unturned in these large cases. Some lines of inquiry may lead to dead ends and, in retrospect, may appear to be of no benefit. At the planning stage, the inquiry may have appeared to be very necessary to competent and thorough counsel. How can a court be in a position to second guess counsels' litigation strategy?

*Id.* at 1378.

Plaintiff's brief was 37 pages in length and contained two brief points. The first argument was about the ALJ's determination regarding Plaintiff's RFC. This was the argument that this court accepted and on what the Plaintiff was awarded benefits. The second brief argument point concerned the ALJ's analysis of Plaintiff's credibility and while perhaps legal error that argument did not substantively matter in the court's reversal decision. It would not be appropriate to say however that Plaintiff's counsel should not be paid for this work. The court believes this time to be reimbursable to Plaintiffs counsel.

Again, as Judge Lord wrote in *Muehler*, when lawyers make representations to the court we tend to believe them unless evidence to the contrary appears of record or common sense and experience would dictate otherwise. While Judge Lord's class action rationale does not find a perfect analog with respect to social security dis-ability cases it is nonetheless true that law office economics and the reality of the delivery of high-quality legal services to people of moderate means or, for that matter of no means, is not done on the cheap. There are numerous reports in the contemporary media of lawyers being paid what can only be said to be handsome fees representing business clients at rates of upwards of a $1000.00 an hour. And, in all likelihood their hourly itemizations are not suspected of being either "excessive" or "unreasonable" as the commissioner claims in the present case. Mr. Schott has represented to the Court that he spent this time and I do not think it unreasonable. The Commissioner cites to cases which state that there is a normal amount of proper hours that are billable in a routine case in this district. Other cases can be found which required hours comparable to those claimed here. *See, e.g. Gonzalez v. Bowen*, 650 F.Supp. 128, 131 (S.D.N.Y.1986) in which EAJA fees were awarded for 70 hours and 55 minutes of work. The Court cited other cases in it's district in which EAJA fees were awarded for 65.75 hours, 100 hours, and 68 hours.

While legal issues are frequently not complex or novel (*See, Why the High Rate of Reversal in Social Security Disability Cases?*, 7 Hamline L.Rev. 1(1984))[2], the facts in disability cases are always unique. It takes significant time to separate the wheat from the chaff of medical records, to correlate a claimant's complaints with the medical evidence, and then to apply the law in a manner useful to a reviewing

---

**2.** By my own count, between 1972 and the present, the Court of Appeals for the Eighth Circuit has handed down in excess of 650 Social Security Disability decisions. Although non-acquiescence was a factor, the subtle factual nuances of each case requires the careful scrutiny of the district courts and the courts of appeal. Each case requires substantial hours of work on the part of the lawyers for the individual claimant, as well as the lawyers for the government. If the lawyers for claimants are not adequately compensated for their work, the very purpose of EAJA and of the statutes authorizing judicial review would be thwarted. On the other hand, lawyers for claimant's, knowing that their requests for fees will be reviewed by the government as well as the courts, must be careful to use and report their time efficiently and accurately.

court so that lawyer's client will prevail in the law suit. The Commissioner's counsel says that he spent 22.5 hours over a period of six days in preparing his Memorandum for the Court in this case. That, however, does not demonstrate that Plaintiff's expenditure of time was somehow unreasonable or not appropriate under all the circumstances of this case.

The Commissioner wrote: "This matter is, additionally, of some importance to Defendant beyond the confines of this case. Defendant seeks to avoid encouraging a sudden departure by those representing SSA claimants in this district from the usual amounts billed in similar cases." In the first place, this Court has in the past and will continue to review any and all claims for EAJA in the same manner it has reviewed this case. In *Commissioner, I.N.S. v. Jean*, 496 U.S. 154, 110 S.Ct. 2316, 2321–2322, 110 L.Ed.2d 134 (1990), Justice Stevens, writing for a unanimous Court, wrote:

Second, the specific purpose of EAJA is to eliminate for the average person the financial disincentive to challenge unreasonable governmental actions. *See Sullivan v. Hudson*, 490 U.S., at 883, 109 S.Ct., at 2253, 104 L.Ed.2d 941 (1989). The EAJA applies to a wide range of awards in which the cost of litigating fee disputes would equal or exceed the cost of litigating the merits of the claim. If the Government could impose the cost of fee litigation on prevailing parties by asserting a "substantially justified" defense to fee applications, the financial deterrent that the EAJA aims to eliminate would be resurrected. *The Government's general interest in protecting the federal fisc is subordinate to the specific statutory goals of encouraging private parties to vindicate their rights and "curbing excessive regulation and the unreasonable exercise of Government authority."* [footnotes omitted] [emphasis added]

In footnote 14 to the just cited passage, the Court quoted S.Rep. No. 96–253, p. 7 (1979):

Providing an award of fees to a prevailing party represents one way to improve citizens access to courts and administrative proceedings. When there is an opportunity to recover costs, a party does not have to choose between acquiescing to an unreasonable Government order or prevailing to his financial detriment.... By allowing a decision to contest Government action to be based on the merits of the case rather than the cost of litigating, [the EAJA] helps assure that administrative decisions reflect informed deliberation.

In conclusion, the Court finds Plaintiffs request is reasonable and not grossly excessive. Accordingly the Commissioner is ordered to pay Plaintiff's Counsel, Max Schott and Associates, the sum of $8476.41 for EAJA Attorney Fees and $250.00 from the judgment fund as reimbursement for the Plaintiffs filing fee.

IT IS SO ORDERED.