Justice Sotomayor,
with whom Justice Stevens and Justice Ginsburg join, concurring.
I join the Court’s opinion because I agree that the text of the Equal Access to Justice Act (EAJA) and our precedents compel the conclusion that an attorney’s fees award under 28 *599 U. S. C. § 2412(d) is payable to the prevailing litigant rather than the attorney. The EAJA does not legally obligate the Government to pay a prevailing litigant’s attorney, and the litigant’s obligation to pay her attorney is controlled not by the EAJA but by contract and the law governing that contract. That conclusion, however, does not answer the question whether Congress intended the Government to deduct moneys from EAJA fees awards to offset a litigant’s preexisting and unrelated debt, as the Treasury Department began to do only in 2005 pursuant to its authority under the Debt Collection Improvement Act of 1996 (DCIA). In my view, it is likely both that Congress did not consider that question and that, had it done so, it would not have wanted EAJA fees awards to be subject to offset. Because such offsets undercut the effectiveness of the EAJA and cannot be justified by reference to the DCIA’s text or purpose, it seems probable that Congress would have made, and perhaps will in the future make, the opposite choice if clearly presented with it.
In enacting the EAJA, Congress found “that certain individuals, partnerships, corporations, and labor and other organizations may be deterred from seeking review of, or defending against, unreasonable governmental action because of the expense involved in securing the vindication of their rights in civil actions and in administrative proceedings.” § 202(a), 94 Stat. 2325, note following 5 U. S. C. §504, p. 684 (Congressional Findings). As we have often recognized, “the specific purpose of the EAJA is to eliminate for the average person the financial disincentive to challenge unreasonable governmental actions.” Commissioner v. Jean, 496 U. S. 154, 163 (1990); see also Scarborough v. Principi, 541 U. S. 401, 406 (2004) (by “expressly authorizing] attorney’s fees awards against the Federal Government,” Congress sought “‘to eliminate the barriers that prohibit small businesses and individuals from securing vindication of their rights in civil actions and administrative proceedings *600 brought by or against the Federal Government’” (quoting H. R. Rep. No. 96-1005, p. 9 (1979))); Sullivan v. Hudson, 490 U. S. 877, 883 (1989) (the EAJA was designed to address the problem that “ ‘[f]or many citizens, the costs of securing vindication of their rights and the inability to recover attorney fees preclude resort to the adjudicatory process’ ” (quoting S. Rep. No. 96-253, p. 5 (1979))). EAJA fees awards, which average only $3,000 to $4,000 per case, have proved to be a remarkably efficient way of improving access to the courts for the statute’s intended beneficiaries, including thousands of recipients of Social Security and veteran’s benefits each year.[1] Brief for Respondent 4-5; see also Jean, 496 U. S., at 164, nn. 12-13.
The EAJA’s admirable purpose will be undercut if lawyers fear that they will never actually receive attorney’s fees to which a court has determined the prevailing party is entitled. The point of an award of attorney’s fees, after all, is to enable a prevailing litigant to pay her attorney. See, e. g., Missouri v. Jenkins, 491 U. S. 274, 285 (1989) (“We . .. take as our starting point the self-evident proposition that the ‘reasonable attorney’s fee’ provided by [42 U. S. C. § 1988] should compensate” for “the work product of an attorney”); Hensley v. Eckerhart, 461 U. S. 424, 435 (1983) (“Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee”). We have accordingly acknowledged that in litigants’ motions for attorney’s fees, “the real parties in interest are their attorneys.” Gisbrecht v. Barnhart, 535 U. S. 789, 798, n. 6 (2002). Subjecting EAJA fees awards to administrative offset for a litigant’s debts will unquestionably make it more difficult for persons *601 of limited means to find attorneys to represent them. See, e.g., Brief for National Organization of Social Security Claimants’ Representatives et al. as Amici Curiae 25 (hereinafter NOSSCR Brief).
In its arguments before this Court, the Government resists this self-evident conclusion, but each of the three reasons it proffers is unpersuasive. First, the Government suggests that because EAJA fees awards are limited to those circumstances in which the Government’s position is not “substantially justified,” 28 U. S. C. § 2412(d)(1)(A), no lawyer can rely on an EAJA fees award when deciding to take a case, so the possibility of an offset eliminating the award will play no additional role in the lawyer’s decision.[2] Reply Brief for Petitioner 16-17. But it is common sense that increasing the risk that an attorney will not receive a fees award will inevitably decrease the willingness of attorneys to undertake representation in these kinds of cases.
Second, the Government contends that any disincentive the fear of administrative offset may create is mitigated in the Social Security context by the Social Security Act’s independent provision authorizing a fees award payable directly to the attorney. See id., at 17-18 (citing 42 U. S. C. § 406(b)(1)(A)). But as the Government acknowledges, the “EAJA’s fee-shifting provisions are potentially more generous than [the Social Security Act’s] in at least three respects”: (1) A court may not award attorney’s fees under the Social Security Act, but may under the EAJA, when the claimant wins only a procedural victory and does not obtain *602 any past-due benefits; (2) fees under the Social Security Act are limited to a percentage of benefits awarded, while EAJA fees are calculated under the lodestar method by examining the attorney’s reasonable hours expended and her reasonable hourly rate; and (3) in contrast to the Social Security Act, fees may be awarded under the EAJA in addition to, rather than out of, the benefits awarded. Brief for Petitioner 6-7. EAJA awards thus provide an important additional incentive for attorneys to undertake Social Security cases.
Finally, the Government argues that lawyers can easily determine at the outset whether a potential client owes the Government a debt and can then assist the client in establishing a written repayment plan that would prevent an offset. Reply Brief for Petitioner 18. At oral argument, however, the Government acknowledged that it was not aware of any instance in which this has happened in the five years since it began subjecting EAJA fees awards to administrative offset. Tr. of Oral Arg. 12-13. It is not difficult to understand why. Helping a client establish a repayment plan would be a time-consuming endeavor uncompensated by any fee-shifting provision, and a client who needs such assistance is unlikely to have the funds to pay the attorney for that service. If the Government is instead suggesting that a lawyer can simply decline to represent a prospective client once she knows of the client’s debtor status, that suggestion only proves my point. Cf. NOSSCR Brief 25 (describing deterrent effect of offsets on representation).
In the end, the Government has no compelling response to the fact that today’s decision will make it more difficult for the neediest litigants to find attorneys to represent them in cases against the Government. I “find it difficult to ascribe to Congress an intent to throw” an EAJA litigant “a lifeline that it knew was a foot short____Given the anomalous nature of this result, and its frustration of the very purposes behind the EAJA itself, Congress cannot lightly be assumed to have intended it.” Sullivan, 490 U. S., at 890.
*603 The Government suggests that it is possible to glean such intent from the fact that Congress did not expressly exempt EAJA awards from administrative offset under the DC I A. Reply Brief for Petitioner 19-20; 31 U. S. C. § 3716(c)(1)(C) (specifying certain federal payments that are not subject to administrative offset); see also 31 CFR § 285.5(e)(2) (2009) (identifying payments that are not subject to administrative offset because of a statutory exemption). If “application of the offset program to such awards will make it more difficult for Social Security claimants or other litigants to find attorneys,” the Government contends, the “provisions that govern the offset program indicate that Congress is willing to bear that cost.” Reply Brief for Petitioner 20. The history of these provisions indicates otherwise. For more than two decades after the EAJA was enacted in 1980, the Commissioner of Social Security “consistently paid” EAJA fee awards directly to the attorney, not the prevailing party. Stephens ex rel. R. E. v. Astrue, 565 F. 3d 131, 135 (CA4 2009); see also Bryant v. Commissioner of Social Security, 578 F. 3d 443, 446 (CA6 2009); cf. ante, at 591, n. 3, 597. “In fact, the Commissioner created a direct deposit system for attorneys and issued [Internal Revenue Service] 1099 forms directly to the attorneys who received awards, noting the awards as taxable attorney income.” Stephens, 565 F. 3d, at 135. Not until 2005, when the Treasury Department extended the offset program to cover “miscellaneous” federal payments, including “fees,” did the Commissioner cease paying EAJA fees awards directly to attorneys and adopt the position that the awards were appropriately considered the property of the prevailing party. Id., at 136 (internal quotation marks omitted); see also Bryant, 578 F. 3d, at 446; ante, at 589-590, 597. Congress therefore had no reason to include a specific exemption of EAJA fees awards (in the Social Security context or otherwise) from the offset program when it enacted the DCIA in 1996.
*604 I am further reluctant to conclude that Congress would want E A JA fees awards to be offset for a prevailing litigant’s unrelated debts because it is not likely to effectuate the DCIA’s purpose of “maximiz[ing] collections of delinquent debts owed to the Government by ensuring quick action to enforce recovery of debts and the use of all appropriate collection tools.” § 31001(b)(1), 110 Stat. 1321-358. This purpose would be better served if claimants are able to find attorneys to help them secure the benefits they are rightfully owed in the first place, thereby making available a source of funds to permit repayment of the claimants’ Government debts at all. See NOSSCR Brief 32; see also 31 U. S. C. § 3716(c)(3)(A) (after initial $9,000 annual exemption, Social Security benefits are subject to administrative offset).
While I join the Court’s opinion and agree with its textual analysis, the foregoing persuades me that the practical effect of our decision “severely undermines the [EAJA’s] estimable aim. . . . The Legislature has just cause to clarify beyond debate” whether this effect is one it actually intends. Bartlett v. Strickland, 556 U. S. 1, 44 (2009) (Ginsburg, J., dissenting).

 The EAJA makes fee awards available to challenge Government action under a wide range of statutes, but, as respondent notes, the vast majority of EAJA awards are made in these two contexts, with Social Security cases representing the lion’s share. Brief for Respondent 4-5; Brief for National Organization of Social Security Claimants’ Representatives et al. as Amici Curiae 22-23.

 In its brief, the Government downplays the frequency with which fees awards under the EAJA are made. At oral argument, respondent’s counsel represented that EAJA fees awards are made in 42% of Social Security cases in which the claimant prevails and in 70% of all veteran’s benefits cases filed. Tr. of Oral Arg. 42-43. The Government did not contest the number for Social Security cases but suggested that the percentage of veteran’s benefits cases resulting in EAJA awards is closer to 50% or 60%. Id., at 52. Under either estimate, these are hardly vanishing odds of success for an attorney deciding whether to take a client’s case.